**Rio Shareese JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 01–08–00828–CR, 01–08–01015–CR, 01–08–01016–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 2011.

Dissenting Opinion by Justice Sharp May 26, 2011.

Dissenting Opinion from Denial of En Banc Consideration by Justice Jennings May 26, 2011.

Brian W. Wice, Houston, Mark W. Stevens, Galveston, for Appellant.

Kurt Sistrunk, Crim. Dist. Atty., Galveston County, B. Warren Goodson Jr., Rebecca Klaren, Asst. Crim. Dist. Attys., Galveston, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION ON REHEARING

MICHAEL MASSENGALE, Justice.

Appellant Rio Shareese Jones has filed motions for rehearing and for reconsideration en banc. We grant rehearing and withdraw our majority opinion and judgment of January 31, 2011, issuing the following in their stead. Our disposition of the appeals remains unchanged. Because we are issuing a new majority opinion, the motion for en banc reconsideration of our prior opinion is moot. *See Brookshire Bros., Inc. v. Smith,* 176 S.W.3d 30, 41 & n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

Jones was convicted by a jury of the offenses of (1) possession of a firearm by a felon,[1] (2) possession with intent to deliver cocaine weighing more than four grams but less than 200 grams,[2] and (3) possession with intent to deliver methylenedioxy methamphetamine (ecstasy) weighing more than four grams but less than 400 grams.[3] Jones pleaded true in each offense to prior felony convictions for aggravated assault and arson. Finding Jones to be a habitual offender, the jury assessed

---

1. *See* TEX. PENAL CODE ANN. § 46.04(a)(1), (e) (West Supp. 2010) (third-degree felony) (trial court case number 07CR3567, appellate case number 01–08–00828–CR).

2. Texas Controlled Substances Act, Tex. Health & Safety Code Ann. §§ 481.102(a)(3)(D), 481.112(a), (d) (West 2010) (first-degree felony) (trial court case number 07 CR 3568, appellate case number 01–08–01015–CR).

3. Texas Controlled Substances Act, TEX. HEALTH & SAFETY CODE ANN. §§ 481.103(a)(1), 481.113(a), (d) (West 2010) (first-degree felony) (trial court case number 07CR3569, appellate case number 01–08–01016–CR).

punishment for each offense at 99 years in prison, and the judgments state that all three sentences will run concurrently. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2010). Jones brings six issues on appeal. He claims the trial court erred in denying his motions to suppress evidence collected pursuant to a search warrant, based on his allegations that the supporting affidavit failed to demonstrate probable cause and contained false statements. He also appeals from the trial court's denial of his requests for a jury instruction concerning the legality of the search and for disclosure of an informant's identity. Finally, he challenges the legal and factual insufficiency of the evidence supporting his conviction for possession of a firearm by a felon. We affirm.

## Background

In September 2007, Officer A. Bjerke of the Texas City Police Department Special Crimes Unit met a confidential informant from whom he received information about "crack cocaine being sold" at a home located at 219 North Pine Road in Texas City, a residence occupied by appellant Rio Shareese Jones. The informant had been to the house numerous times, the latest time being about two nights prior to the meeting. Bjerke began a narcotics investigation and learned from another Texas City police officer that a City of Dickinson police officer had information from a second confidential informant about crack cocaine being sold at that address. On November 5, 2007, Bjerke arranged a meeting with the second confidential informant and, that same night, set up a "controlled buy" at the home, using the second informant. Bjerke witnessed the controlled buy and saw Jones come to the door to make the sale. The informant returned with a rock of crack cocaine weighing 0.8 grams. Just after midnight on November 6, Bjerke made statements

under oath in an affidavit in support of a search warrant for 219 North Pine Road. The affidavit described the initial contact with the first informant and the subsequent controlled buy, but it did not specify the dates of the described events. The affidavit also requested authorization for a no-knock entry into the home on the basis that Bjerke had received information from a confidential informant that Jones kept handguns and long guns in the house and because he had past arrests for evading and resisting arrest. At 12:24 a.m. that same day, the magistrate issued a no-knock-entry search warrant, and Texas City police executed the warrant.

When the police arrived at 219 North Pine, there were two men and one woman in the driveway. One of the men was Jones. The woman, later identified as Tamisha Thomas, remained in the driveway as the police approached, but the two men ran into the house. One team of police followed the men into the house and found them in one of the bedrooms along with a third man. A .22 caliber rifle was seen in plain view, leaning against a dresser. In the closet, the police found women's clothing and shoes, men's and women's toiletries, a bag containing powder cocaine, a large bottle of cough syrup containing codeine, and a woman's bag, containing a letter to "Misha Thomas" at a Dickinson, Texas address. In that same room, police also found a shirt with a crack pipe in the pocket, a letter from the Social Security Administration addressed to Jones at a La Marque, Texas address, and a receipt for transmission service from a Texas City business, made out to Jones, dated October 24, 2007, and listing an address for Jones of "219 Pine, TC, Texas."

Jones was captured in the bedroom containing the rifle and the letter addressed to him. Police found $199 in his pocket. According to Texas Workforce Commis-

sion records checked by police, he was not employed and had not been employed for some time. The others present were also arrested, and police found a small amount of crack cocaine in one man's pocket and a small amount of powder cocaine in Thomas's pocket.

The second bedroom in the two-bedroom home had no beds, only a counter with drawers, a television, a computer, a small coffee table, and a reclining chair. Police found ecstasy tablets in a bag in the closet and a notebook ledger on the coffee table listing names and amounts. On the counter and in drawers under the counter, police found "three to four" digital scales, a "cookie" of crack cocaine, crack cocaine in a plastic bag, powder cocaine, a bottle of codeine cough syrup, various kinds of pills, and some currency taped together in stacks of one hundred dollars. On the counter also was Jones's wallet, which contained his driver's license. The license had an expiration date of July 28, 2012 and a La Marque, Texas address. In a box on the counter near the wallet were some prescription medicines in Jones's name, filled at a clinic in Texas City. Police also found some insulin for Jones and a glucometer used to measure blood sugar. In a small black cabinet full of movie DVDs and video games, located on the same counter and near Jones's wallet and medicine, were two digital scales and a loaded .38 Special handgun. Also found in the house were numerous baby bottles, razor blades, many measuring cups, a bag containing bullets, a bag containing $1,150, and a videocamera by the front door, pointing toward the roadway. Nothing other than the baby bottles suggested the presence of a child in the house, and officers testified that codeine is often found, stored, and transported in baby bottles. Police also found a baby bottle with a spoon with what was thought to be codeine in it.

## Analysis

### I. Probable cause to support search warrant

Jones's first issue challenges the trial court's denial of his motion to suppress evidence from the search of his home based on an alleged lack of probable cause. He filed a motion in each case to suppress the evidence seized as a result of the search warrant. He alleged that his federal constitutional rights and his state constitutional and statutory rights were violated because the supporting affidavit did not reflect sufficient probable cause in that it: (1) failed to show that the act or event upon which probable cause was based occurred within a reasonable time period prior to making the affidavit; (2) failed to state sufficient underlying circumstances to establish the credibility and reliability of the confidential informants; and (3) lacked sufficient underlying circumstances which would permit the conclusion that the alleged contraband was at the location claimed.

At the hearing on the motions to suppress, no evidence other than the search warrant was offered by either the State or Jones. Both sides tendered argument on the issues raised in Jones's motions. The trial court denied the motions to suppress, and, on the request of Jones, entered findings of fact, including, in relevant part, the following:

1. Affiant Officer [A.] Bjerke submitted a Search Warrant with Affidavit for Search Warrant to Judge Darrell Apffel on November 6, 2007.

2. Judge Apffel signed the Search Warrant and Affidavit at 12:24 am on said date, indicating that probable cause had been satisfied.

3. Officer Bjerke and other police officers executed the search warrant on

November 6, 2007 and seized 17 items including illegal narcotics, guns, and U.S. currency.

4. Officer Bjerke and other police officers arrested Rio Shareese Jones for the offense of Possession of Firearm by Felon, POCS: Cocaine With Intent to Deliver; POCS: Codeine with Intent to Deliver, and POCS: MDMA with Intent to Deliver.

The trial court also entered the following conclusions of law:

1. The Affidavit for Search Warrant does reflect sufficient probable cause to justify the issuance of the Search Warrant.

2. The Affidavit for Search Warrant contains sufficient underlying circumstances to establish the credibility and reliability of the confidential informant.

3. The Affidavit for Search Warrant contains sufficient underlying circumstances which would permit the conclusion that the alleged contraband was at the location in which it was claimed.

4. The Affidavit for Search Warrant contains sufficient information to show that the act or event upon which probable cause was based occurred within a reasonable time prior to making the affidavit.

5. The Affidavit for Search Warrant contains sufficient information to establish probable cause that the alleged contraband would be at the location at the time the search warrant was signed and executed.

6. Therefore, since Probable Cause was found by Judge Apffel and sustained by this Court, the results of the Search Warrant are admissible as a matter of law and fact in trial and were not obtained in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, or Article 38.23 of the Texas Code of Criminal Procedure. Thus, Rio Shareese Jones was arrested with probable cause and not in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, or 19 of the Texas Constitution.

Before the start of voir dire, Jones's trial counsel objected to the admission at trial of any evidence obtained as a result of the search warrant. The trial court granted Jones a running objection to this evidence.

### a. Standard of review

We review a trial court's decision to deny a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that depend on credibility, and reviewing de novo the trial court's application of the law to those facts. *Hubert v. State,* 312 S.W.3d 554, 559 (Tex. Crim.App.2010); *see Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App. 2000). When a trial court makes explicit findings of fact, we determine whether the evidence, viewed in the light most favorable to trial court's ruling, supports those fact findings. *See State v. Iduarte,* 268 S.W.3d 544, 548 (Tex.Crim.App.2008); *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim.App.2006). The trial court's legal conclusions, on the other hand, are subject to de novo review, not deference. *See Hubert,* 312 S.W.3d at 559; *State v. Sheppard,* 271 S.W.3d 281, 291 (Tex.Crim.App. 2008).

When a defendant raises a complaint that a search should have been suppressed because the magistrate had no

probable cause to issue a search warrant, we do not review the magistrate's determination of probable cause de novo, but instead apply a "great deference" standard of review. *Swearingen v. State,* 143 S.W.3d 808, 810–11 (Tex.Crim.App.2004); *see also Illinois v. Gates,* 462 U.S. 213, 234–37, 103 S.Ct. 2317, 2330–31, 76 L.Ed.2d 527 (1983). Under Texas law, "[n]o search warrant shall issue for any purpose ... unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance[,]" and "[a] sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested[.]" TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2010). Appellate review of an affidavit in support of a search warrant is conducted under a highly deferential standard, interpreting the affidavit in a commonsensical and realistic manner, and deferring to all reasonable inferences that a magistrate could have made. *Rodriguez v. State,* 232 S.W.3d 55, 61 (Tex. Crim.App.2007).

■ In *Illinois v. Gates,* the United States Supreme Court reaffirmed the traditional totality-of-the-circumstances analysis for Fourth Amendment probable-cause determinations:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332 (citing *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The Court of Criminal Appeals has construed this "flexible and nondemanding" standard to apply to the Texas Constitution as well. *Rodriguez,* 232 S.W.3d at 60. Our inquiry, then, is whether there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *See id.* at 62. Our review is limited to the four corners of the affidavit; statements made during a motion to suppress hearing do not factor into our determination. *Massey v. State,* 933 S.W.2d 141, 148 (Tex.Crim.App.1996); *McKissick v. State,* 209 S.W.3d 205, 212 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

■ The Supreme Court has explained how we must review determinations of probable cause:

> [A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." "A grudging or negative attitude by reviewing courts toward warrants" is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."

*Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (citations omitted) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969); *United States v. Ventresca,* 380 U.S. 102, 108, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). The rationale for this holding is that, as was true in this case, affidavits "are nor-

mally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Gates,* 462 U.S. at 235, 103 S.Ct. at 2330–31 (quoting *Ventresca,* 380 U.S. at 108, 85 S.Ct. at 746). The traditional standard for judicial review of a magistrate's probable-cause determination "has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Jones,* 362 U.S. at 271, 80 S.Ct. at 736). "This 'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Flores v. State,* 319 S.W.3d 697, 702 (Tex.Crim.App.2010) (quoting 6 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.7(c), at 452 (4th ed. 2004 & Supp. 2009–2010)).

### b. Location

■ Jones's first contention is that the affidavit was insufficient because it did not adequately describe the premises to be searched. This argument was not made in Jones's written motion to suppress. The affidavit describes the residence at 219 North Pine Road in considerable detail, but at the hearing on the motion to suppress, Jones's counsel argued that the affidavit was inadequate because it made no mention of the fact that the residence consisted of a duplex and a garage apartment. Jones, however, provided no evidence of this at the hearing.

On appeal, Jones does not claim that the argument of his counsel was evidence, but instead states that this argument was "recounted without contradiction." It is axiomatic that the argument of counsel is not evidence. *See Hutch v. State,* 922 S.W.2d 166, 173 (Tex.Crim.App.1996). Jones has therefore failed to provide an evidentiary basis to contest the adequacy of the affidavit with respect to its description of the location to be searched.

### c. Credibility and reliability of informant

■ Jones next contends that the affidavit was insufficient to show probable cause because the affidavit's description of the initial confidential informant contains no statement about his reliability or credibility and because Bjerke had no personal knowledge about the second confidential informant's reliability or credibility.

■ The affidavit stated that the Dickinson Police Department had established that the second confidential informant was reliable and credible. There is no bar on the use of hearsay in determining probable cause. *See Jones v. United States,* 362 U.S. at 269–71, 80 S.Ct. at 735–36; *Brinegar v. United States,* 338 U.S. 160, 172–73, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879 (1949). In a post-*Gates* opinion, the Texas Court of Criminal Appeals held that hearsay may be used to show probable cause so long as there is a substantial basis for crediting the hearsay. *Wilkerson v. State,* 726 S.W.2d 542, 545 (Tex.Crim.App.1986). Here, Bjerke's affidavit went beyond a mere statement that the second confidential informant was reliable and credible. The affidavit referred to previous instances in which the informant provided correct information to the police that led to the seizure of controlled substances and arrests. Jones neither challenges this assertion on appeal, nor argues that a law enforcement officer cannot rely on infor-

mation from a fellow officer to establish probable cause. The affidavit also referenced Bjerke's own investigation and establishment of the controlled buy, in which the confidential informant was utilized.

While Bjerke testified at trial that there was no basis for the initial informant's reliability or credibility, the second informant supplied the same information to the police, i.e., that Jones was selling crack cocaine. The failure of the affidavit to establish the first informant's reliability or credibility is therefore not fatal. *See Lowery v. State*, 843 S.W.2d 136, 141 (Tex. App.-Dallas 1992, pet. ref'd).

■ On appeal, Jones also argues for the first time that the affidavit contains "double hearsay" regarding that second confidential informant. Because this issue was not raised in the trial court, it has not been preserved for review and any error has been waived. *See* TEX.R.APP. P. 33.1(a)(1) (requiring party to raise specific ground in trial court as prerequisite for appellate complaint).

### d. Staleness of information

■ Jones's third, and in his description, most critical contention is that the affidavit was insufficient to show probable cause because it did not state a specific date on which the controlled buy took place. He argues this information is the "linchpin for a finding of probable cause." This is a complaint about the "staleness" of the information, because "[p]robable cause ceases to exist when, at the time the search warrant is issued, it would be unreasonable to presume the items remain at the suspected place." *McKissick*, 209 S.W.3d at 214; *see also Flores v. State*, 287 S.W.3d 307, 310 (Tex.App.-Austin 2009), *aff'd*, 319 S.W.3d 697 (Tex.Crim.App.2010). Jones's brief does not suggest any other relevance of the specificity of the time of

the controlled buy to the determination of probable cause.

In relevant part, the affidavit provides the following temporal references related to the controlled buy:

... Affiant recently received information from a confidential informant in reference to crack cocaine being sold out of the residence located at 219 North Pine Road.

After obtaining the information about 219 North Pine Road Affiant began a narcotics investigation....

. . . .

Affiant arranged to make a narcotics buy from the suspect location, 219 North Pine Road ... [the controlled buy and field testing are then described in the past tense].

. . . .

Based on the information provided to Affiant by the source and other confidential informants, and my own independent investigation, Affiant believes that a violation of the Texas Controlled Substances Act is currently taking place at 219 North Pine Road, Texas City, Galveston County, Texas.

Subscribed and sworn to before me by said Affiant on this the 6th day of November, 2007.

The affidavit includes several direct and indirect references to the timing of the controlled buy. First, Bjerke described his contact with the first confidential informant as having occurred "recently." After that meeting, Bjerke "began a narcotics investigation" into the suspected ongoing criminal activity of "crack cocaine being sold." The investigation culminated in the controlled buy forming the basis for probable cause, which was described as occurring "after" Bjerke "recently" met with the first confidential informant. In addition, Bjerke attested that based on in-

formation from informants and his own independent investigation, including the controlled buy, he believed that drug offenses were "currently taking place at 219 North Pine Road." The affidavit was dated November 6, 2007. The search warrant was issued at 12:24 a.m. on November 6.

In order to issue a warrant, a magistrate is required "to determine (1) that it is *now probable* that (2) contraband ... *will be* on the described premises (3) when the warrant is executed." *United States v. Grubbs*, 547 U.S. 90, 96, 126 S.Ct. 1494, 1500, 164 L.Ed.2d 195 (2006); *see also* TEX.CODE CRIM. PROC. ANN. art. 18.01(c) (West Supp. 2010) (providing, in relevant part, that evidentiary search warrant may not be issued unless sworn affidavit sets forth sufficient facts to establish probable cause that items constituting evidence to be searched for are located at place to be searched). A magistrate must be able to ascertain from the affidavit the closeness of time of the event that is the basis for probable cause sufficient to issue the warrant based on an independent judgment of probable cause. *See, e.g., Schmidt v. State*, 659 S.W.2d 420, 421 (Tex.Crim.App. 1983). The facts attested to in the affidavit must be "so closely related to the time of the iss[uance] of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932); *see also Peltier v. State*, 626 S.W.2d 30, 32 (Tex.Crim.App.1981); *Heredia v. State*, 468 S.W.2d 833, 835 (Tex. Crim.App.1971).

We begin our analysis by noting that the failure to include specific dates and times of relevant events described in the affidavit in this case is not a model demonstration of the basis of the affiant's knowledge of circumstances suggesting a fair probability that contraband or evidence of a crime will be found in a particular place, something the State conceded during oral argument. The question before us, however, is whether the lack of a specific date or time is fatal in this case or whether the totality of the affidavit nonetheless justified the magistrate's finding of probable cause.

Bjerke's affidavit recited facts that indicated a continuing drug operation was occurring: (1) the first confidential informant told Bjerke that crack cocaine was being sold at 219 North Pine; (2) after speaking to the first confidential informant, Bjerke then began his own investigation; (3) he arranged a controlled narcotics buy at the house using the second confidential informant, who told Bjerke he purchased what he believed to be a rock of crack cocaine; and (4) the rock tested positive for cocaine in a field test. The affidavit also indicated that the information from the two informants and Bjerke's field test was closely related in time to the request for the issuance of the warrant. Bjerke stated that he "recently" received information from the first confidential informant. He then initiated an investigation and arranged a controlled buy. The controlled buy occurred even more "recently" because it happened after Bjerke received that initial tip and conducted an independent investigation. As a result of the original tip and his own independent investigation, Bjerke believed that a violation of the Texas Controlled Substances Act was "currently" taking place at 219 North Pine.

"The amount of delay which will make information stale depends upon the particular facts of the case, including the nature of the criminal activity and the type of evidence sought." *United States v. Allen*, 625 F.3d 830, 842 (5th Cir.2010). Facts indicating ongoing criminal activity have long been recognized as diminishing the importance of establishing a specific

and immediate time period in the affidavit: "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972), *quoted in* 2 LaFave, *supra,* § 3.7(a), at 374; *see also Bastida v. Henderson,* 487 F.2d 860, 864 (5th Cir.1973); *Bernard v. State,* 807 S.W.2d 359, 365 (Tex.App.-Houston [14th Dist.] 1991, no pet.). "Conceding that the decisions of appellate courts of other states are advisory, and not controlling," *Ex parte Hernandez,* 953 S.W.2d 275, 281 (Tex.Crim.App.1997), we further observe that since *Gates* was decided, three state supreme courts have held that probable cause existed for issuance of a search warrant in situations in which there was a continuing drug operation and the search-warrant affidavit referred to a recent event.[4] Professor LaFave has observed that reliance upon the word "recently" can be problematic in some cases, particularly in circumstances in which "the relevant facts are nothing more than a one-time purchase or viewing of drugs, as to which only a brief period of time could pass before the information could be stale." 2

LaFave, *supra,* § 3.7(b), at 396 (footnotes omitted). However, his treatise also acknowledges that when confronted with an affidavit asserting that critical events occurred "recently" or using other words to that effect, most courts have been inclined to hold that this language will suffice for a showing of probable cause. *Id.* at 395 & n. 76. In this regard, we also note that in *Sutton v. State,* a pre-*Gates* case, the Court of Criminal Appeals held that an affidavit stating that "affiants have recently received information from a confidential informant" was a sufficient reference to time when considering the totality of the affidavit. 419 S.W.2d 857, 861 (Tex.Crim. App.1967). Bjerke's affidavit referred to "recently" conducted surveillance culminating in a controlled purchase of drugs from the location to be searched and the officer's resulting belief that a drug offense "is currently taking place"; similarly, the *Sutton* affiant's reference to "recently" observed drugs was bolstered by his belief that "narcotic drugs are now concealed"—references the Court of Criminal Appeals held "were sufficiently definite and current to warrant the conclusion that the act or event relied upon as a basis for probable cause occurred within a reasonable time before the making of the affidavit, and authorized the magistrate to issue the search warrant." *Id.* at 860–61.

4. *See State v. Walston,* 236 Mont. 218, 768 P.2d 1387, 1390 (1989) (holding that continuing criminal activity such as drug dealing coupled with confidential informant's statement that he had "recently" heard defendant state he was growing and selling marijuana was not so stale as to negate probable cause); *Commonwealth v. Jones,* 542 Pa. 418, 668 A.2d 114, 118 (1995) (affidavit's evidence of continuing drug operation coupled with confidential informant's statement that he "has just" observed contraband was not insufficient merely because affidavit did not contain a specific date); *Huff v. Commonwealth,* 213 Va. 710, 194 S.E.2d 690, 695–96 (1993) (quoting *Reynolds v. State,* 46 Ala.App. 77, 238 So.2d 557, 558 (1970)) (affidavit's reference to repeated drug distribution coupled with statement that events occurred "in recent weeks" and "on a recent date" was not insufficient; "A statement in an affidavit for a search warrant that an informant had 'recently' seen or purchased narcotic drugs, when connected with other language that would lead to the conclusion that the unlawful condition continued to exist on those premises at the time of the application for the warrant, has been held sufficient to show the time when the alleged violation took place.").

Mindful that a grudging, negative attitude towards warrants would be inconsistent with the Fourth Amendment's preference for searches conducted pursuant to warrants, *see Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, we hold that the temporal references within the affidavit allowed the magistrate to determine there was a substantial basis for concluding that a search would uncover evidence of wrongdoing. We reach this conclusion because the affidavit adequately suggested a continuing criminal operation, including "recently" obtained information from the first confidential informant, from the affiant's own investigation, and from the second confidential informant who made the controlled buy. All of this information supported the affiant's belief that a violation was "currently" taking place on a specified date when the affidavit was sworn, and at a time which was no more than 24 minutes before the specified time when the search warrant was signed.

### e. Adequacy of affidavit

Having considered all of Jones's contentions that the affidavit was inadequate and applying standard of review set out in *Illinois v. Gates,* we hold that the affidavit provided the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing at 219 North Pine Road. In so doing, we follow the example of *Davis v. State,* an analogous circumstance in which the affidavit at issue was "far from exemplary." 202 S.W.3d 149, 157–58 (Tex.Crim.App.2006). The Court of Criminal Appeals observed:

> When too many inferences must be drawn, the result is a tenuous rather than substantial basis for the issuance of a warrant. Best practice is for the affiant expressly to include an officer's experience, background information, and previous associations with contraband so that little is left to inference, and the

magistrate has specifically articulated facts to evaluate. Otherwise, the officer/affiant risks denial of his warrant, suppression of evidence at trial, or reversal on appeal because the warrant lacks a substantial basis. But the law requires that we defer to a magistrate's reasonable, common sense conclusions in assessing whether to issue a search warrant. Appellate courts must allow for any reasonably available inferences and provide magistrates appropriate deference.

*Id.* For the same reason in this case, we overrule Jones's first issue.

### II. *Franks* motion

 In his second issue, Jones contends the trial court erred in denying his motion pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), whereby he sought to void the search warrant and suppress all resulting evidence based on his allegation that Bjerke's affidavit contained false statements. In order to obtain a *Franks* evidentiary hearing, a defendant must: (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant. *Cates v. State,* 120 S.W.3d 352, 356 (Tex.Crim.App.2003); *Ramsey v. State,* 579 S.W.2d 920, 922–23 (Tex.Crim.App. 1979) (citing *Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85).

Instead of seeking an evidentiary hearing and ruling on the *Franks* motion before trial, Jones waited until after the State rested in the guilt-innocence phase

of the trial. Jones then presented his *Franks* motion to the trial court, in which he made an offer of proof to show the affidavit was false. This argument consisted of his claim that before the search warrant was issued on November 6, 2007, (1) no one ever entered his property at 219 North Pine Road to purchase crack cocaine, (2) a person came by his property wanting to purchase crack cocaine, but he turned that person away, and (3) a few days later the same person came back and stood in the street, asking to purchase crack cocaine, but Jones again turned the person away. Jones called no witnesses and offered no affidavits or other evidence, but referred only by reference to the previous testimony of Bjerke. In this regard, Jones argued that when Bjerke testified, he was unable to recall details about the controlled buy, such as the specific date or the amount paid to the informant. There also had been no documentation that money paid to Jones during the controlled buy had been recovered from Jones's person or the search of his residence.

We review a trial court's decision on a *Franks* suppression issue under the same standard that we review a probable-cause deficiency, a mixed standard of review. *See Fenoglio v. State*, 252 S.W.3d 468, 473 (Tex.App.-Fort Worth 2008, pet. ref'd). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, while we review de novo application-of-law-to-fact questions that do not turn upon credibility and demeanor. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). However, in deciding a *Franks* motion the trial court may consider not only the probable-cause affidavit but also the evidence offered by the party moving

to suppress because this attack on the sufficiency of the affidavit arises from claims that it contains false statements. *See Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676; *Cates*, 120 S.W.3d at 355–57; *Fenoglio*, 252 S.W.3d at 473.

The only evidence offered by Jones was in the form of a reference to the previous testimony of Bjerke. Jones did not testify, so he did not offer evidence for the statements in his *Franks* motion offer of proof. Jones offered the previous testimony of Bjerke to show that he "had just made generalizations and has not been able to specifically specify when this particular transaction occurred" and "could not provide detailed specific information and specifically left out information about the source and about how he conducted this information." None of the referenced testimony is direct evidence that Bjerke's affidavit was false. In addition, the trial court had the opportunity to weigh Bjerke's credibility and demeanor, and we defer to the trial court on that determination. *See Johnson*, 68 S.W.3d at 652–53.

We overrule issue two.

### III. Article 38.23 charge

In his third issue, Jones contends that the trial court erred in failing to give an instruction to the jury, pursuant to Code of Criminal Procedure article 38.23(a). *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). The statute provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a

reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* A defendant's right to the submission of an instruction under article 38.23(a) "is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State,* 242 S.W.3d 504, 509–10 (Tex.Crim.App.2007).

■ Before a defendant is entitled to the submission of a jury instruction under article 38.23(a), he must meet three requirements:

(1) the evidence heard by the jury must raise an issue of fact;

(2) the evidence on that fact must be affirmatively contested; and

(3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden,* 242 S.W.3d at 510. On appeal, Jones claims the trial court should have given the instruction because there was a disputed fact issue concerning the number of controlled buys at 219 North Pine, i.e., two controlled buys versus one. Bjerke testified about one controlled buy, but he did not testify that there was only one controlled buy. Another police officer's testimony that he observed two different controlled buys involving two different informants on two different days is not necessarily inconsistent with Bjerke's testimony. Jones therefore cannot meet the second requirement for an article 38.23(a) instruction, that evidence on the number of controlled buys was affirmatively contested. He also has failed to demonstrate the materiality of this alleged fact dispute to the lawfulness of the officers' conduct.

Accordingly, there was no error in the jury charge from the absence of any article 38.23(a) instruction regarding custody because there was no conflict in the evidence. We overrule Jones's third issue.

## IV. Request to identify confidential informant

■ In his fourth issue, Jones contends that the trial court erred in not disclosing the identity of the State's initial confidential informant under Rule 508(c)(3) of the Texas Rules of Evidence:

*Legality of obtaining evidence.* If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the court is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, it may require the identity of the informer to be disclosed. The court shall, on request of the public entity, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this subdivision except a disclosure in camera, at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the public entity.

Tex.R. Evid. 508(c)(3). At trial, Jones moved for disclosure of the identity of the first confidential informant, specifically arguing that Bjerke had no basis to believe that the first informant was reliable or credible. The State objected, and the trial court sustained the objection.

On appeal, Jones contends the trial court erred on two grounds he did not preserve at trial: (1) the affidavit did not

provide any meaningful details as to any controlled buys at 219 North Pine and (2) Bjerke allegedly provided misleading information concerning the first confidential informant. Those issues have been waived. *See* TEX.R.APP. P. 33.1(a)(1). The remaining issue raised on appeal, that Bjerke had no basis to believe that the first informant was reliable or credible, was preserved in the trial court.

Jones's argument about the reliability or credibility of the first informant fails for the same reason it did not support suppression of evidence from the search. The second confidential informant supplied the same information to the police, i.e., that Jones was selling crack cocaine. Because the failure of the affidavit to establish the first informant's reliability or credibility did not affect the legality of the search warrant, the trial court committed no error in refusing to direct the disclosure of the first confidential informant's identity. *See* TEX.R. EVID. 508(c)(3); *Lowery*, 843 S.W.2d at 141. We overrule Jones's fourth issue.

## V. Sufficiency of the evidence of possession of firearm by a felon

Jones's fifth and sixth issues challenge the legal and factual sufficiency of the evidence to support his conviction for possession of a firearm by a felon. Jones stipulated at trial that he had been convicted of a felony less than five years before the date of the charged offense. On appeal he specifically attacks the sufficiency of the evidence to show "links" between himself and the weapons found. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim.App.2006).

### a. Standard of review

In assessing legal sufficiency, we must consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a ra-

tional jury could have found beyond a reasonable doubt that the accused committed all essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005); *Burden v. State*, 55 S.W.3d 608, 612 (Tex.Crim.App.2001). We must "evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999). Because it is the function of the trier of fact to resolve any conflict of fact, to weigh any evidence, and to evaluate the credibility of any witnesses, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *See id.* at 740; *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *see also Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993). We therefore resolve any inconsistencies in the evidence in favor of the verdict, *Matson*, 819 S.W.2d at 843, and "defer to the jury's credibility and weight determinations." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

For challenges to the factual sufficiency of the evidence, we also apply the *Jackson v. Virginia* standard of review in the light most favorable to the verdict. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (plurality op.), 926 (Cochran, J., concurring) (Tex.Crim.App.2010); *see also Howard v. State*, 333 S.W.3d 137, 137–39 (Tex. Crim.App.2011) (characterizing *Brooks* as having "abolished" factual-sufficiency review). "To establish unlawful possession of a firearm by a felon, the State must show that the accused was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from con-

finement or from community supervision, parole, or mandatory supervision, whichever date is later." *James v. State,* 264 S.W.3d 215, 218 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd); *see* TEX. PENAL CODE § 46.04(a)(1). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.; see* TEX. PENAL CODE § 6.01(b) (West 2003).

■ "If the firearm is not found on the defendant or is not in his exclusive possession, the evidence must affirmatively link him to the firearm." *Id.* at 218–19. The State may establish possession by proving links which demonstrate that the defendant "was conscious of his connection with the weapon and knew what it was." *Id.* at 219. This rule protects the innocent bystander—such as a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to a firearm belonging to someone else. *See Evans,* 202 S.W.3d at 161–62; *Smith v. State,* 176 S.W.3d 907, 916 (Tex.App.-Dallas 2005, pet. ref'd).

■ A nonexclusive list of factors that may establish a link between a defendant and firearms found inside a house which was not in the defendant's exclusive control includes whether: (1) the defendant was present at the time of the search; (2) the defendant was the owner of or had the right to control the location where the firearm was found; (3) the firearm was in plain view; (4) the defendant was in close proximity to and had access to the firearm; (5) firearms or other contraband was found on the defendant; (6) the defendant attempted to flee; (7) conduct by the defendant indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (8) the defendant had a special connection or relationship to the firearm;

(9) the place where the firearm was found was enclosed; and (10) affirmative statements connected the defendant to the firearm, including incriminating statements made by the defendant when arrested. *See Williams v. State,* 313 S.W.3d 393, 397–98 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd); *James,* 264 S.W.3d at 219; *see also Evans,* 202 S.W.3d at 162 & n. 12. "It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct or circumstantial." *Williams,* 313 S.W.3d at 398.

### b. Legal sufficiency

■ Jones contends that the evidence was legally insufficient to link him to the firearms found at 219 North Pine. In this regard, he emphasizes that he never admitted owning the firearms and his fingerprints were not found on them. He was not inside the house at the time of the search, and at least three other people had access to the house. Also, a woman's handbag and clothing were found in the bedroom where the rifle was found.

But viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Jones possessed a firearm. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. The undisputed evidence at trial showed that: (1) Jones was living at 219 North Pine and was paying rent there; (2) the rifle was located in plain view in the same room where he was captured by police and in the same room in which mail addressed to him and a receipt to him at that address was located; and (3) his wallet and medication prescribed for him were located in the other bedroom near the pistol. We recognize that there was also evidence of the presence of others at the time of the search and of women's clothing, shoes, and a bag in the bedroom where the rifle was located, as well as a

lack of usable prints on either weapon resulting in an absence of fingerprint evidence linking the defendant to the weapons. However, in a legal-sufficiency review we are required to defer to the jury's weight determinations and resolve inconsistencies in the evidence in favor of the verdict. *See Marshall,* 210 S.W.3d at 625; *Matson,* 819 S.W.2d at 843. Viewing the evidence in the light most favorable to the verdict, we conclude that the logical force from these links is sufficient for the jury to have concluded beyond a reasonable doubt that Jones exercised care, custody, control, or management over at least the pistol. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Sambath Nhem v. State,* 129 S.W.3d 696, 699 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding that defendant's driver's license and mobile phone bills in close proximity to contraband were sufficient to link him to controlled contraband).

Jones refers us to *Wynn v. State,* 847 S.W.2d 357 (Tex.App.-Houston [1st Dist.] ), *aff'd on other grounds,* 864 S.W.2d 539 (Tex.Crim.App.1993), in support of his contention that the evidence was legally insufficient. We consider *Wynn* to be factually and legally distinguishable. In *Wynn,* unlike the present cases, the defendant was not in the house when the firearm was found and the firearm was found in a room containing no links to him. *Wynn* also did not involve a possession of a firearm charge, but rather dealt with whether the defendant "used or exhibited a firearm" in the commission of an offense. It therefore was not analyzed under the "links" doctrine applicable to possession cases. *Wynn* was also decided under the no-longer-applicable "reasonable hypothesis analytical construct" and so was analyzed for sufficiency under a different standard than we are required to apply in this case. *See Blackman v. State,* No. PD–0109–10, slip op. at 11 (Tex.Crim.App. Apr. 13, 2011); (noting that prosecution has no affirmative duty to rule out every hypothesis except that of guilt); *Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim.App.1991) (rejecting use of reasonable hypothesis analytical construct), *overruled on other grounds, Paulson v. State,* 28 S.W.3d 570 (Tex.Crim. App.2000).

Considering Jones's legal-sufficiency arguments and all of the evidence in the light most favorable to the verdict, the jury could have found the essential elements of possession of a firearm by a felon. We overrule Jones's fifth issue.

### c. Factual sufficiency

In addition to the arguments made in support of his legal-sufficiency argument, Jones argues that the evidence was not factually sufficient based upon the following factors: (1) neither firearm was conveniently accessible to him at the time of his arrest; (2) he made no furtive gestures; and (3) he had no special connection to the firearms. Nevertheless, as previously noted, the undisputed evidence at trial showed that Jones was living at 219 North Pine and was paying rent there; the rifle was located in plain view in the same room where he was found by police and in the same room in which mail addressed to him and a receipt to him at that address was located; and his wallet and prescribed medication were located near the pistol.

Reviewing Jones's factual-sufficiency arguments under the legal-sufficiency standard and considering all of the evidence in the light most favorable to the verdict, the jury could have found the essential elements of possession of a firearm by a felon. Accordingly, the evidence is sufficient. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

We overrule Jones's sixth issue.

## Conclusion

We affirm the judgments of the trial court.

Justice SHARP, dissenting.

JIM SHARP, Justice, dissenting.

While I join with the majority opinion's resolution of appellant's legal-sufficiency issue, I dissent to the Court's judgments as I would grant appellant's first issue and reverse and remand for a new trial.

In its analysis of appellant's first issue, the majority confuses and conflates two related—but distinct—legal concepts: staleness and specificity. Specificity and staleness are interrelated concepts, but involve different questions, and are applicable to different points in a review of a search-warrant affidavit.

Specificity relates to the *adequacy of the affidavit:* whether the affidavit recites sufficiently specific information to determine probable cause. Under Texas law, "no search warrant shall issue for any purpose ... unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance" and "a sworn affidavit setting forth *substantial facts* establishing probable cause shall be filed in every instance in which a search warrant is requested." TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2010) (emphasis added); *see also Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332 (1983) (holding that magistrate must have substantial basis for concluding that probable cause exists). As to the question of timeliness, a magistrate need be able "to ascertain [from the affidavit] the closeness of time [of the event that is the basis for probable cause] sufficient to issue the warrant based on an independent judgment of probable cause." *See Schmidt v. State,* 659 S.W.2d 420, 421 (Tex.Crim.App.1983) (holding affidavit in-

sufficient to support issuance of search warrant that failed to recite *when* incident described took place). A search warrant affidavit *must have a sufficient "level of specificity ... as to [the] time" of such event so that the magistrate would have "a reasonable basis* to infer that [the event] occurred at a time that would substantiate a reasonable belief that the object of the search [is] on the premises to be searched at the time the warrant ... issue[s]." *Davis v. State,* 202 S.W.3d 149, 155, 157 n. 23 (Tex.Crim.App.2006) (emphasis added). The court in *Davis* then noted that when the information in an affidavit fails to "give[ ] a time frame that would corroborate the existence of [the item sought] on the premises when the warrant was requested," it is "insufficient to support the issuance of a warrant" *Id.* at 157; *see also Sherlock v. State,* 632 S.W.2d 604, 608 (Tex.Crim.App.1982) (holding that affidavit is "inadequate if it fails to disclose facts which would enable the magistrate to ascertain from the affidavit that the event upon which the probable cause was founded was not so remote as to render it ineffective.") (citations omitted).

Staleness, on the other hand, relates to whether *the information contained in the affidavit shows probable cause.* In order for the information in an affidavit to show probable cause, "[t]he facts attested to must be so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time." *Peltier v. State,* 626 S.W.2d 30, 32 (Tex. Crim.App.1981) (quoting *Heredia v. State,* 468 S.W.2d 833, 835 (Tex.Crim.App.1971)). "The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in the light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued."

*McKissick v. State,* 209 S.W.3d 205, 214 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

Thus, before a magistrate can determine probable cause, the magistrate must necessarily first have sufficiently specific information for an evaluation. In the case of a timeliness issue, in order to determine whether the information in the affidavit is stale—whether too much time has passed between the events in the affidavit and the time of the issuance of the warrant to make it reasonable to presume that the items remain at the suspected place—the magistrate must first be able to determine how much "time [has lapsed] between the occurrence of the events set out in the affidavit and the time the search warrant was issued." *See id.*

Specificity and staleness are therefore interrelated, but distinct. An affidavit that contains sufficiently specific information to satisfy constitutional and statutory specificity requirements may or may not establish probable cause. Whether the totality of the information in the affidavit justifies a finding of probable cause is not the salient question. Rather, the question to be answered in a specificity review on appeal is: "Is there enough sufficiently specific information in this affidavit to provide a magistrate *a substantial basis for determining* whether there is probable cause?" Staleness, by contrast, deals with whether the information in the affidavit shows that the item sought is still likely to be found at the suspected place. Such a review asks, "Based on information in the affidavit, was the warrant timely? Was the magistrate justified in concluding that it was likely that the items would still be present, i.e., that the information that provided the basis for probable cause was not too remote in time?"

The majority has mixed up these two legal concepts, relying largely on legal theories related to the question of staleness. The majority states that "the question before us ... is whether the lack of a specific date or time is fatal in this case or whether the totality of the affidavit nonetheless *justified the magistrate's finding of probable cause* " and concludes that "we hold that the *affidavit provided* the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing." Majority op. at 736, 738.

In the appeals before us, appellant does not attack the information in the affidavit as being stale, nor does he ask for his convictions to be reversed on that basis. Indeed, the words "stale" or "staleness" never appear in appellant's discussion of his contention regarding the defectiveness of the affidavit. Rather, appellant's complaint on appeal is to the statutory and constitutional defectiveness of the affidavit for failing to provide the magistrate with sufficiently specific information from which the magistrate could make a determination about the timeliness of the warrant.[1]

1. This complaint was preserved below in appellant's motion to suppress, in which appellant specifically asserted that the magistrate who issued the search warrant did not have a substantial basis for concluding that probable cause existed because the affidavit failed to recite when any of the events upon which probable cause was based took place. The trial court made one conclusion of law related to specificity, to-wit:
 4. The Affidavit for Search Warrant contains sufficient information to show that the act

or event upon which probable cause was based occurred within a reasonable time prior to making the affidavit[ ]

and one conclusion of law related to staleness:
 5. The Affidavit for Search Warrant contains sufficient information to establish probable cause that the alleged contraband would be at the location at the time the search warrant was signed and executed.

The majority relies on case law from other states regarding the determination of staleness and probable cause when a specific date is not provided in the affidavit.[2] *See State v. Walston,* 768 P.2d 1387, 1390 (1989) (holding that evidence was "not stale" when informant stated in affidavit that he had "recently" heard defendant state he was growing marijuana, when elsewhere in affidavit informant stated that he had been in defendant's residence twice in last five months and had seen marijuana plants growing; concluding that "recently" must mean some different, more recent, time than the five months previously mentioned); *Commonwealth v. Jones,* 668 A.2d 114, 118 (1995) (holding that affidavit was "not stale" and magistrate had substantial basis upon which to issue search warrant for apartment when affidavit evidenced on-going drug operation at apartment, police were told in last 24 hours by confidential informant that resident of apartment "had just" been selling drugs, and informant had personally

observed drugs in apartment within past two months); and *Huff v. Commonwealth,* 213 Va. 710, 194 S.E.2d 690, 695–96 (1973) (concluding that where there was evidence of an ongoing drug operation, affidavit's reference to drug activity "in recent weeks" was sufficient to permit magistrate to conclude that time period at issue was less than one month and time period for incriminating statement overheard "on a recent date" even less; holding that, under Virginia law, state had shown required "additional facts that would justify magistrate in finding probable cause to believe that the criminal conduct continued to the date of the warrant").

Unlike the cases at hand, all of the affidavits in the out-of-state cases relied upon by the majority included some other *more specific* temporal reference in the affidavit to which the term "recently" could be related (*Walston*—"past five months"; *Jones*—"past [2] two months"; *Huff*—"weeks").[3] These cases therefore

2. The majority also cites generally to 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 3.7(b) (4th ed. 2004). LaFave himself concedes the problems attendant upon reliance upon the word "recently" and his cautious admonition that the use of the word "recently" "*might* be tolerated when the reported facts establish so clearly a continuing course of conduct that the present probable cause could be found to exist even if these facts had been specifically identified as being several months old." (Emphasis added). LaFave cites no Texas cases regarding the required specificity of search warrant affidavits in this discussion. Moreover, the events underlying the affidavit at issue here—which consist of one "tip" and one "buy"—can hardly be characterized as fitting into the category of "so clearly a continuing course of conduct" that probable cause would exist even if these facts were identified as several months old.

3. The majority also cites to a pre-*Gates,* pre-*Schmidt,* pre-*Sherlock,* pre-*Davis* Texas case which is factually distinguishable. In *Sutton v. State,* the court of criminal appeals held that the use of the term "recently," as used

with other references to time in the affidavit, including the term "now," were sufficient to warrant the conclusion that the event relied upon as a basis for probable cause "occurred within a reasonable time before the making of the affidavit." 419 S.W.2d 857, 861 (Tex. Crim.App.1967). In *Sutton,* the term "recently" was used twice. The first reference was to when the officers received information from the confidential informant. The second was in describing the information received from the confidential informant, who stated that he "ha[d] seen the marijuana recently." This *second* use of the term "recently" provided some temporal time frame for the event upon which probable cause was based. In the cases before us, we have only a time reference for the date that the first informant relayed information to Bjerke. The affidavit does not provide a time reference for the event upon which the probable cause was based—the controlled buy—other than that it occurred after the relay of information. Additionally, the *Sutton* court coupled "recently" with the term "that said narcotic drugs are now concealed by [appellant]" in making

do **not** stand for the proposition that the use of the naked term "recently"—along with evidence of an ongoing drug operation, but without any other temporal reference in the affidavit—renders a search warrant "sufficiently specific" to meet constitutional and (Texas) statutory requirements.

I agree that where an affidavit recites facts indicating activity of a protracted and continuous nature, the passage of time is less significant for the purposes of determining staleness and, thus, probable cause. *See Lockett v. State,* 879 S.W.2d 184, 189 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd). However, I disagree that such legal principle alters the statutory and constitutional requirement that an affidavit provide a sufficiently specific time frame so that a magistrate has a substantial basis from which it can determine that the sought item is on the premises at the time the warrant is issued. Rather, this "protracted and continuous nature" principle simply permits a greater period of time between the event forming the basis of probable cause and the issuance of the warrant before the basis for probable cause would be rendered stale.

But the question before us is not whether the information in the affidavit was stale and so the "protracted and continuance nature" principle is not applicable to the question at hand. The question before us is whether the information in the affidavit is sufficiently specific as to the time of the incident that provides the basis for probable cause—the controlled buy—to provide the magistrate with a substantial basis for determining probable cause. I would hold that it is not.

In the affidavit at issue, the only direct temporal reference is the word "recently," used in reference to Bjerke's contact with the first confidential informant. The only temporal reference to the date of the controlled buy forming the basis for probable cause is the term "after," placing the controlled buy at some period in time after Bjerke "recently" met with the first confidential informant. I disagree with the majority's assertion that Bjerke's statement that he "believes that [an offense] is currently taking place" supplies a temporal reference on which the trial court could rely.[4] As discussed in footnote four of this

its evaluation. The term "now concealed" occurred immediately after a sworn statement by the affiant setting out a specific date that the offense of possession occurred and was a statement of fact. By contrast, in the cases before us, Bjerke's statement that he "believes that [an offense] is currently taking place" is not a statement of fact, but merely a conclusory opinion upon which probable cause cannot be based. *See Gates,* 462 U.S. at 239, 103 S.Ct. at 2332. In *Sutton,* the combination of the statement of fact that "drugs are now concealed," coupled with the statement of fact that the informant "has seen the marijuana recently," provided the magistrate with a reasonable basis to believe that the event that was relied upon for probable cause—the possession of marijuana witnessed by the informant—occurred within a reasonable time before the making of the affidavit. In the instant case, Bjerke's conclusory "belief" that an offense was occurring at the time

he made out his affidavit, even coupled with a statement that "recently" he had received information from a confidential informant, did not provide the trial court with a sufficient basis for determining that *the controlled buy* occurred at a time "so closely related to the time of the issuance of the warrant," *see Peltier,* 626 S.W.2d at 32, so as to "corroborate the existence of [the cocaine] on the premises" at the time that "the warrant was requested." *See Davis,* 202 S.W.3d at 155.

4. The majority emphasizes the use of the phrase "currently." LaFave criticizes reliance on the use of the present tense to establish that the facts are sufficiently timely, and sets out that the "better view" is that timely probable cause should not turn on the tenses used in the affidavit. He speaks with approval of courts that have rejected the use of the present tense to establish timeliness, and

dissent, this is not a statement of fact, but one of belief on which probable cause cannot be based. *See Gates,* 462 U.S. at 239, 103 S.Ct. at 2332–33 (holding that sworn statement that officer "has cause to suspect and does believe" that contraband is located at a certain location "will not do" and is a "mere conclusory statement").

Further, we may not consider any external sources of information that may have come to the magistrate's attention, such as the circumstances of the presentation of the affidavit, the time that the affidavit was presented to the magistrate, any haste or immediacy that may have been displayed by the officers, or any comments made by the officers at the time of the presentation. Just as we are not permitted to review these factors in determining whether the affidavit establishes probable cause, *see Massey v. State,* 933 S.W.2d 141, 148 (Tex.Crim.App.1996), we similarly would not be permitted to use such external factors in determining whether the affidavit itself did or did not contain sufficiently specific information in order to be adequate under law.

Reviewing the four corners of this affidavit in light of the standards set out by *Davis, Schmidt* and *Peltier,* I conclude that the affidavit fails to recite with sufficient specificity the time of the controlled buy such that the magistrate was provided a reasonable basis to infer that the buy "occurred so close in time" to his issuance of the warrant to substantiate a belief that the cocaine was at the residence when the warrant issued. *See Davis,* 202 S.W.3d at 155; *Peltier,* 626 S.W.2d at 32. The term "recently," made in reference to time of

the relay of information from the first confidential informant to the officer, does not provide the necessary specificity for the magistrate to determine the "closeness of time" of the controlled buy to the issuance of the warrant or provide a "time frame which would corroborate" the existence of cocaine at the residence "when the warrant was requested." [5] *See Schmidt,* 659 S.W.2d at 421; *Davis,* 202 S.W.3d at 157. Indeed, from the four corners of this affidavit, it would have been impossible to ascertain "the time elapsing between the [buy] and the time the search warrant was issued." *See McKissick,* 209 S.W.3d at 214.

Because the error involved implicates the right to be free of unreasonable searches and seizures and is constitutional in dimension under both the U.S. and Texas constitutions, we must conduct a constitutional-harm analysis. *See Hernandez v. State,* 60 S.W.3d 106, 108 (Tex.Crim.App. 2001) (holding that harm analysis for erroneous admission of evidence in violation of Fourth Amendment is to be conducted under Texas Rule of Appellate Procedure 44.2). We therefore must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the convictions. *See* TEX.R.APP. P. 44.2(a) (providing that, when constitutional error involved, appellate court must reverse conviction or punishment unless court determines beyond reasonable doubt that error did not contribute to conviction or punishment). Absent evidence arising from the search conducted pursuant to the warrant, appellant would not have been convicted.

---

states that "fortunately" a growing number of courts are adopting such "sound reasoning" and not relying on the use of the present tense. 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 3.7(b) (4th ed. 2004).

**5.** It is the date of the illegal event, the event forming the basis for the probable cause, which is significant, not the date that an informant spoke to the police. *See Schmidt v. State,* 659 S.W.2d 420, 421 (Tex.Crim.App. 1983).

Therefore, I conclude that appellant was clearly harmed by this error.

I recognize that the Texas Court of Criminal Appeals granted petitions for discretionary review in at least three cases last fall to address the question of the specificity required in search warrant affidavits as to the time factor.[6] I urge the Court of Criminal Appeals to grant the undoubtedly forthcoming petitions for discretionary review in these cases as well.

Accordingly, I join only in the portion of the majority opinion disposing of appellant's legal-sufficiency issue. As I believe that appellant's first issue should be sustained, the judgments reversed, and the cases remanded for a new trial, I dissent to the affirmance of appellant's convictions.[7]

Reconsideration en banc denied.

**TERRY JENNINGS, Justice,**
dissenting from the denial of en banc consideration.

The relatively easy issue presented to the en banc court in this case is whether the use of the vague word "recently," without any reference to a specific time frame, in an affidavit made in support of a search warrant is sufficient to establish probable cause that the evidence to be searched for is, at the time the warrant is issued, located in the place to be searched. The panel majority's affirmative, and erro-

neous, answer to this straightforward question will come as a surprise to experienced law-enforcement officers and magistrates, who, familiar with the well-established law, recognize the need for such specific time frames to establish probable cause for a search. More important, the panel majority's opinion is in conflict with our fundamental constitutional and statutory protections against searches made without probable cause, and it stands in stark contrast to the well-established precedent of the United States Supreme Court and the Texas Court of Criminal Appeals.

Revealing the weakness of its reasoning, the panel majority, in its previous opinion, conceded that it did "not wish to express any sense of approval of the routine omission [from affidavits made in support of search warrants] of the specificity of the time at which [an] informant learn[s] of probable cause to conduct a search." See Jones v. State, Nos. 01–08–00828–CR, 01–08–01015–CR, and 01–08–01016–CR (Tex. App.-Houston [1st Dist.] Jan. 31, 2011), withdrawn and substituted opinion at Jones v. State, 338 S.W.3d at 752 (Tex. App.-Houston [1st Dist.] 2011, no pet. h.). Although the panel majority, upon rehearing, has withdrawn this concession from its current opinion, the fact remains that, in affirming the trial court's judgment, the panel majority is, by fiat, expressly approving of the omission of specific time

---

**6.** The Texas Court of Criminal Appeals recently issued an opinion in one of those cases. See State v. McLain, 337 S.W.3d 268, 270–273 (Tex.Crim.App.2011) (noting that magistrate could infer that informant saw defendant with methamphetamine at a particular location within 72 hours of signing of search warrant affidavit in which affiant testified, "In the past 72 hours, a confidential informant advised the Affiant that [defendant] was seen in possession of a large amount of methamphetamine at his residence and business"). McLain, however, is distinguishable from the present case because here, unlike in McLain,

the affidavit contains no such specific temporal reference that would have allowed the magistrate to reasonably infer when the informant actually made his observations.

**7.** I also do not join with the majority's resolutions of appellant's second, third, fourth, and sixth issues as I believe that they are unnecessary dicta. Because appellant is entitled to have his convictions reversed and the cases remanded for a new trial based on his first issue, we need not reach any of any of his other issues apart from legal sufficiency.

frames from search-warrant affidavits. The panel majority still admits that "the failure to include specific dates and times of relevant events described in [the search-warrant] affidavit in this case *is not a model demonstration.*" *Jones v. State,* 338 S.W.3d at 736 (Tex.App.-Houston [1st Dist.] 2011, no pet. h.) (emphasis added). However, given that the panel majority's opinion constitutes binding precedent on this Court, the panel majority's new, much lower standard will necessarily be followed. It will only serve to confuse, and not clarify, the law. And it will lead law-enforcement officers and trial courts into committing more serious errors that will eventually have to be corrected.

If allowed to stand as binding precedent, the panel majority's opinion will effectively eliminate the requirement that an affidavit made in support of a search warrant contain a specific time frame to corroborate the existence of evidence at the place to be searched at the time the warrant is issued. Thus, it would undermine the meaning of "probable cause" and render article 18.01(c)(3) of the Texas Code of Criminal Procedure meaningless. Accordingly, I respectfully dissent from the denial of en banc reconsideration of this case. *See* TEX. R.APP. P. 41.2(c).

## The Affidavit

The facts pertinent to the motion to suppress evidence of appellant, Rio Shareese Jones, are found in the "Affidavit for Search Warrant," in which a Texas City Police Officer testified, in pertinent part, as follows:

While assigned to the Texas City Police Special Crimes Unit Affiant *recently* received information from a confidential informant in reference to crack cocaine being sold out of the residence located at 219 North Pine Road.

*After* obtaining the information about 219 North Pine Road Affiant began a narcotics investigation. Officer C. Alcocer recalled being contacted by Dickinson Police Officer M. Henson, in reference to information about 219 North Pine Road. Officer Alcocer stated to Affiant that Officer Henson had information from a confidential informant about the selling of crack cocaine at 219 North Pine Road. Officer Alcocer contacted Officer Henson and arranged a meeting with the confidential informant, hereafter referred to as the "source." *After* the meeting members of the Texas City Police Department Special Crimes Unit elected to enlist the assistance of the source to assist in the narcotic investigation at the suspect location, 219 North Pine Road....

Affiant arranged to make narcotics buy from the suspect location, 219 North Pine Road, with the assistance of the source....

Upon the source's arrival at the suspect location the source was observed approaching the 219 North Pine Road, and walking onto the front porch and into the front door of the residence. The source remained inside the residence for approximately 2 minutes, and was then seen exiting the residence and leaving the area....

Based on the information provided to Affiant by the source and other confidential informants, and my own independent investigation, Affiant *believes* that a violation of the Texas Controlled Substances Act is *currently* taking place at 219 North Pine Road, Texas City, Galveston County, Texas....

(Emphasis added.)

As can be readily observed, and as conceded by the panel majority, the officer did not reference any specific dates and times in regard to the relevant events that he

described in his affidavit. Importantly, the officer did not state the time that the informant had learned that narcotics were being sold out of the residence. Nor did the officer state the time that the informant had made the controlled buy of narcotics at the residence. In fact, each of the officer's other references to time relate back to his initial reference that he had "recently received information." And from this vague time reference, the officer stated his conclusory *belief* that narcotics were "currently" at the residence. Thus, from within the four corners of the affidavit, it is simply not possible to ascertain the specific time that narcotics were last observed to be at the residence other than at some indefinite point in time after the officer had "recently received information" and some indefinite point in time before the magistrate issued the search warrant.

## Probable Cause

In his first point of error, appellant argues that the trial court erred in denying his motion to suppress evidence because, among other reasons, the above affidavit, made in support of the search warrant in question, "is silent as to when [the informant's] controlled buy, the linchpin for probable cause, took place." He further argues that "[b]ecause the magistrate could not 'read into the document material information that does not otherwise appear on its face,' the affidavit was fatally defective and could not have provided the magistrate with a substantial basis that probable cause existed to issue the warrant."

The United States Constitution guarantees the right to be secure from unreasonable searches and seizures, and it provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend.

IV. The Texas Constitution makes the same guarantee, and also provides that no warrant shall issue "without probable cause, supported by oath or affirmation." TEX. CONST. art. I, § 9. Accordingly, in determining the existence of probable cause to search an identified location, a court looks only within "the four corners of the affidavit" made in support of a search warrant. *Massey v. State*, 933 S.W.2d 141, 148 (Tex.Crim.App.1996).

Probable cause to search for contraband or evidence exists only when "there is a fair probability that contraband or evidence of a crime *will be found* in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (emphasis added). As recent as 2006, the United States Supreme Court explained that "the probable-cause requirement looks to whether evidence will be found *when the search is conducted....*" *United States v. Grubbs*, 547 U.S. 90, 95, 126 S.Ct. 1494, 1499, 164 L.Ed.2d 195 (2006) (emphasis in original). By statute, Texas provides that a search warrant may not be issued unless a sworn affidavit "sets forth *sufficient facts* to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized *are located* at or on the particular person, place or thing to be searched." TEX.CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2010) (emphasis added).

Thus, it is axiomatic that to support the issuance of a search warrant, the information in an affidavit made in support of the warrant must "*give[ ] a time frame* that ... corroborate[s] the existence of [contraband or evidence] on the premises [to be

searched] *when the warrant [is] request-ed.*" *Davis v. State*, 202 S.W.3d 149, 155 (Tex.Crim.App.2006) (emphasis added). Why? An affidavit that omits such "a specific time" frame necessarily cannot establish probable cause to conduct a search because a "magistrate would have had no reasonable basis to infer" that any events referred to in the affidavit "occurred at a time that would substantiate a reasonable belief that the object of the search was on the premises to be searched at the time the warrant was issued." *Id.* Nevertheless, in contradiction of well-established constitutional law and the sound reasoning of *Davis*, the trial court below concluded that the officer's affidavit testimony, as quoted above, established probable cause to justify the issuance of the search warrant in this case.

The panel majority, in its opinion prior to rehearing, admitted that the term "recently," as used by the officer in his affidavit, is "vague." And, although the panel majority continues to acknowledge that the term "recently" can be "problematic in some cases," it, like the trial court below, still concludes that the "temporal references within the affidavit allowed the magistrate to determine there was a substantial basis for concluding that a search would uncover evidence of wrongdoing." It, thus, erroneously holds that "the affidavit provided the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing" upon the execution of the search warrant.

In its original opinion, the panel majority, in support of its holding, relied not upon United States Supreme Court or Texas Court of Criminal Appeals authority, but rather the out-of-state cases of *State v. Walston*, 236 Mont. 218, 768 P.2d 1387, 1390 (Mont.1989); *Commonwealth v. Jones*, 542 Pa. 418, 668 A.2d 114, 118 (Pa. 1995); and *Huff v. Commonwealth*, 213

Va. 710, 194 S.E.2d 690, 695–96 (Va.1973). Although the panel majority has now moved its references to these opinions to a footnote, the fact remains that each of the affidavits in these out-of-state cases in fact included some other reference to a specific time frame from which the time necessary to establish probable cause could be reasonably inferred. *See Walston*, 768 P.2d at 1388 ("past five months"); *Jones*, 668 A.2d at 118 ("past two months"); *Huff*, 194 S.E.2d at 695 ("weeks"). Thus, the reasoning of these opinions does not support the panel majority's significant departure from United States Supreme Court and Texas Court of Criminal Appeals precedent.

In support of its assertion that there are several "temporal references" in the officer's affidavit that supported probable cause for the issuance of the search warrant, the panel majority emphasizes that the officer stated that (1) he had "recently" received information from a confidential informant, (2) "[a]fter that meeting," he "began a narcotics investigation," and (3) the investigation "culminated in the controlled buy forming the basis for probable cause, which was described as occurring 'after' [the officer had] 'recently' met with the first confidential informant." Although the panel majority relies upon these "temporal references" in support of its holding, the bottom line is that the only "temporal reference" with any significant meaning is the officer's use of the vague term "recently."

I do agree with the panel majority's previous characterization of the term "recently" as "vague." However, the use of the term "recently," without any reference whatsoever to a specific time frame, is not sufficient to support probable cause in a search-warrant affidavit. "Recent" is defined as "having happened, begun, or been done not long ago or not long before;

belonging to a past period of time, comparatively close to the present." NEW OXFORD AMERICAN DICTIONARY 1421 (2001). Because the term "recently" is by definition imprecise and not specific, it is not possible, without more specific information, to, from its use, ascertain insight as to specifically when pertinent events took place. "Recent" could mean a few minutes ago, a few hours ago, a few days ago, a few weeks ago, a few months ago, or even a few years ago. However, the law requires that an affidavit made in support of a search warrant provide, with sufficient specificity, facts that would allow a magistrate to determine that contraband or evidence will, in fair probability, be present when the warrant is requested. *Grubbs,* 547 U.S. at 95, 126 S.Ct. at 1499; *Davis,* 202 S.W.3d at 155; TEX.CODE CRIM. PROC. ANN. art. 18.01(a) (Vernon Supp. 2010). Here, from the four corners of the officer's affidavit, the time at which the events purportedly giving rise to probable cause actually occurred cannot be ascertained; rather, one is left to "guess, hope, and surmise" that the events occurred at a time sufficient to establish probable cause. *See Lowery v. State,* 98 S.W.3d 398, 402 (Tex.App.-Amarillo 2003, no pet.). In other words, "It is apparent that the magistrate could not ascertain the closeness of time sufficient to issue the warrant based on an independent judgment of probable cause." *Schmidt v. State,* 659 S.W.2d 420, 421 (Tex.Crim.App.1983) (quoting *Heredia v. State,* 468 S.W.2d 833, 835 (Tex.Crim. App.1971)).

It is important to note that the time relevant to establishing probable cause is the time when an informant acquired the pertinent information, not the time when the informant conveyed the information to a police officer.[1] *Flores v. State,* 827 S.W.2d 416, 419 (Tex.App.-Corpus Christi 1992, pet. ref'd); *see also Schmidt,* 659 S.W.2d at 421 (affidavit failed to state when affiant received information from another and when the other obtained information); *Sherlock v. State,* 632 S.W.2d 604, 608 (Tex.Crim.App.1982) (affidavit failed to convey "any definite idea as to when the alleged incident took place"). An affidavit that fails to state when the affiant received pertinent information from an informant, when the informant obtained the information, or when the described conduct took place is, as a matter of law, insufficient to support the issuance of a search warrant. *Serrano v. State,* 123 S.W.3d 53, 61 (Tex. App.-Austin 2003, pet. ref'd) (citing *Schmidt,* 659 S.W.2d at 421; *Peltier v. State,* 626 S.W.2d 30, 32 (Tex.Crim.App. 1981); *Heredia,* 468 S.W.2d at 835)); *see also State v. Davila,* 169 S.W.3d 735, 739 (Tex.App.-Austin 2005, no pet.) (affidavit insufficient when it omitted time that tip was received and there was no point of reference for informant's claim that narcotics were being possessed).

Finally, the panel majority asserts that, here, the officer's affidavit "adequately suggested a continuing criminal operation" and "indicated that the information from the two informants and [his] field test was closely related in time to [his] request for the issuance of the warrant." It argues

---

1. The Texas Court of Criminal Appeals has recently opined that a magistrate may infer when an informant actually saw a defendant with contraband at a specific location from language in an affidavit stating the specific time the informant communicated the information to the affiant. *State v. McLain,* 337 S.W.3d 268, 270 (Tex.Crim.App.2011) (magistrate could infer that informant saw defendant with contraband within 72 hours of signing of search warrant affidavit in which affiant testified, "In the past 72 hours, a confidential informant advised the Affiant that [defendant] was seen in possession of a large amount of methamphetamine at his residence and business").

that the officer's statement of his conclusory belief that an offense was "currently taking place," in conjunction with his use of the term "recently," supports the trial court's finding of probable cause to support issuance of the search warrant. The Austin Court of Appeals considered a similar issue in *State v. Jordan,* in which a police officer, in his probable cause affidavit stated, "I have good reason to believe that heretofore, on or about the 6th day of June, 2008" the defendant did commit the offense of driving while intoxicated. 315 S.W.3d 660, 663 (Tex.App.-Austin 2010, pet. granted). As explained by the court, such a statement of a police officer's belief and conclusion that a crime has been committed does not give a magistrate a substantial basis for determining the existence of probable cause. *Id.* (citing *Gates,* 462 U.S. at 239, 103 S.Ct. at 2317). Thus, the court concluded that the officer's affidavit did not state, as a matter of fact, that an offense took place on June 6, and it could not be reasonably inferred that an offense had occurred on June 6 from the mere fact that the warrant was requested on that date. *Id.* (citing *Schmidt,* 659 S.W.2d at 421). As noted by the Austin Court of Appeals, the affiant in *Schmidt,* a police officer, stated his "belief," based upon information received from another, that a suspect possessed cocaine on a certain date. 659 S.W.2d at 421. However, because the affidavit failed to state when the events described therein "took place," the Texas Court of Criminal Appeals held the affidavit inadequate to support probable cause. *Id.* Here, likewise, the police officer's statement of his *belief* that an offense was "currently taking place" does not constitute a statement of fact, but is merely a conclusory statement that did not support probable cause. *See id.*

In contrast, the affiant in *Sutton v. State* clearly testified, as a statement of fact, that "narcotic drugs are *now* concealed by"

the defendant. 419 S.W.2d 857, 860 (Tex. Crim.App.1967) (emphasis added). Placing great emphasis on the officer's "statement 'that said narcotic drugs are *[n]ow* concealed by [the defendant],'" the court held that the use of the word "recently" with the "other references to time," including the reference to *"[n]ow,"* was "sufficiently definite and current to warrant the conclusion that the act or event relied upon as a basis for probable cause occurred within a reasonable time before the making of the affidavit, and authorized the magistrate to issue the search warrant." *Id.* at 860–61 (emphasis added). Critically, the affiant in *Sutton* also clearly testified to the fact that the informant had "recently" told the affiant that the defendant and co-defendant, in the present tense, *"are* living at [the location to be searched] and that they *have* a large quantity of marihuana in their possession at this location. The informant has been to these living quarters *and has seen the marihuana recently."* *Id.* at 861 (emphasis added).

Here, again in stark contrast, the officer in his affidavit made no reference as to when the informant had learned that narcotics were being sold at the residence or when the informant made the controlled buy and, thereby, had last observed the presence of narcotics at the residence. Unlike the affiant in *Sutton,* the officer here used the term "recently" only to describe when he had "received information," and each of his other time references relate back to this initial, "vague" reference. There is no present-tense reference to appellant being at the residence and having narcotics in his possession at the time the affidavit was sworn to by the officer. From within the four corners of the affidavit presented here, it is simply not possible to ascertain the time that narcotics were last observed to be at the residence other than at some indefinite point in time after

the officer had "recently received information" and some indefinite point in time, not long before, the magistrate issued the search warrant. Thus, to the extent that the State and the panel majority rely upon *Sutton* to support their arguments, their reliance is not only problematic because *Sutton* was decided in 1967 prior to *Gates, Grubbs* and Davis, but their reliance is very much misplaced because the reasoning of *Sutton*, based upon its contrasting facts, actually undermines their arguments.

## Conclusion

In his Motion for Reconsideration En Banc, appellant argues that en banc review of the panel majority's decision is necessary because the panel majority's opinion "sanctions a search spawned by an affidavit that failed to provide the magistrate with a substantial basis to find that probable cause existed," and, in doing so, it "considerably weaken[s] the Fourth Amendment protections against unreasonable governmental intrusions into constitutionally safeguarded areas of our lives." Indeed, as noted above, the panel majority itself seems to acknowledge how far afield it has gone, stating that "the failure to include specific dates and times of relevant events described in [the search-warrant] affidavit in this case *is not a model demonstration.*" (Emphasis added.) This of course begs the question: if it sufficiently established probable cause to support the issuance of the search warrant, i.e., if it passed muster under the United States and Texas Constitutions, the Texas Code of Criminal Procedure, and the case law, why should it not, as the panel majority admitted in its prior opinion, serve as a model to be followed?

The bottom line is that the panel majority opinion cannot be reconciled with the well-established precedent of the United States Supreme Court and the Texas Court of Criminal Appeals as cited above. Indeed, although the panel majority has taken great pains to bolster its arguments on rehearing, it seems readily apparent that it is trying to fit a square peg into a round hole. As implicitly suggested in its current opinion, and even more so in its prior opinion, the panel majority's reasoning represents a significant departure from the most basic and fundamental legal principles concerning what is necessary to establish probable cause for the issuance of a search warrant. Accordingly, the panel majority's error in upholding the search-warrant affidavit in this case is of such importance to the jurisprudence of the State of Texas that it should be corrected. *See* TEX. GOV'T CODE ANN. § 22.001(a)(6) (Vernon 2004).

A majority of the justices of the Court voted to overrule the motion for reconsideration en banc.

Justices JENNINGS, HIGLEY, and SHARP dissent from the denial of the motion for reconsideration en banc.

Justices HIGLEY and SHARP join Justice JENNINGS'S opinion dissenting from the denial of reconsideration en banc.