Opinion issued April 9, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00479-CR

_____

**GIOVANY FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Case No. 09-DCR-052519

## MEMORANDUM OPINION

A jury convicted appellant Giovany Flores of aggravated robbery and sentenced him to 15 years in prison and a $10,000 fine. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). On appeal, Flores challenges the sufficiency of the

evidence, and he argues that the trial court abused its discretion by denying his motion to suppress, refusing to allow defense witnesses to testify at an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), and refusing his requested jury instructions.  We affirm.

## Background

Shakun Parti, who was 61 years old at the time, went to a small Indian grocery store in Sugar Land, Texas early one summer evening.  The store was on the corner of a strip mall, and Parti parked across from the side entrance.  When she left the store approximately 15 minutes later, she walked toward her car.  She saw two young men running toward her, and she opened her car door and attempted to get in.  But the two men, later identified as Flores and Kye Jones, grabbed her tightly by the arm and began hitting her about the head with a pistol.  At the time, Parti did not realize it was a gun; rather she knew only that it was something heavy hitting her head on one side and causing the other side of her head to strike her car.  She was confused and disoriented, and she feared for her life.  At trial, Parti could not recall what the men looked like, except to say that "one was black and the other was not black."  When asked if she could remember which man had hit her on the head, Parti testified that she was too confused from the blows to her head and the men were too close together to determine what each did.  Parti heard the men speak only once, when they demanded that she remove

her rings, but she did not know who spoke. The men tried to remove her rings by force, at one point cutting her finger. Eventually, the men grabbed Parti's purse and ran away together. Bystanders rushed to Parti's aid, and she was taken by ambulance to a hospital. As a result of the robbery, Parti suffered a brain hemorrhage and permanent disfigurement of her finger.

Robert Moore witnessed the robbery. Moore was driving down the alley near the strip mall, taking a shortcut to another store. He saw two men standing beside a dumpster outside of the Indian grocery store. He saw Parti leave the store, and he continued down the alley. In his rearview mirror, Moore saw the two men who had been standing beside the dumpster run over and jump into Parti's car. He testified that he initially thought he was witnessing a robbery or a carjacking. He backed up and got out of his car to get a better look, but he got back inside when the men began to run down the alley toward him. As the men ran past his car, he saw one of them, a Hispanic man in his early twenties with a medium-thin build and wearing a white and blue cap, later identified as Flores, run to a red car parked in the alleyway. Moore testified the other man was a black man with dreadlocks in his twenties, later identified to be Jones, who stopped about ten feet from where Moore was parked. At this point, Moore saw that Jones was holding a gun. Moore testified Jones shook his head and told him to go, at which point he drove forward down the alley and called the police.

Another witness, Harjeev Satia, testified that he heard a woman scream and saw two men running toward the alleyway. In his sworn affidavit given to Officer K. Longtin on the day of the incident, Satia testified that he saw "a black guy" and "a white guy." However, at trial, Satia recalled seeing "a black guy" running with a pistol and "a Mexican guy with blond hair." In addition, the evidence showed that the witnesses identified the two men who robbed Parti as a black man with dreadlocks and either as a Hispanic or white man with blond or light colored hair.

Sugar Land Police Officer R. Garza, the lead detective on the case, learned from patrol officers at the scene that two men matching the descriptions had been seen at a pub in the same strip mall as the Indian grocery store, just before the robbery. Fingerprints that were obtained from a coin machine inside the pub matched Flores's. Photos of the suspects inside the pub were obtained from surveillance video and released to the media. Once the information was released, Garza began to receive tips and information regarding the suspects, including an address where Jones resided. After several witnesses, including Moore, identified Jones in a photographic lineup, arrest warrants were issued for both Jones and Flores.

Detectives searched Flores's apartment and found a firearm in a dresser drawer in a bedroom that Flores shared with his brother, Daniel. DNA testing found Parti's blood on the trigger of the gun.

4

Approximately a week after the arrest warrants were issued, Flores turned himself in and requested to be interviewed because he had heard that Jones had informed police that he was to blame for the robbery. Flores, who was 17 years old at the time, told police that he and Jones had gone to the pub to play pool on the night Parti was robbed. He said the bartender asked them to leave because he was underage. As for the robbery, Flores denied that he and Jones had planned or discussed robbing anyone. Flores said that he tried to pull Jones away from Parti several times by pulling on his shirt, and that it was Jones who "pistol whipped" Parti with his gun, held her from behind, tried to remove her rings, and took her purse. Flores said he took the purse from Jones and ran with it. Flores said that after the robbery they went to his apartment and that he agreed to keep the gun at his house, stashing it in a dresser in a bedroom he shared with his brother Daniel. In his first interview, he denied that Daniel was involved in the robbery at all, but in a second recorded interview taken by Garza, Flores admitted that he had lied to protect his brother and said that Daniel had driven the getaway car. Again, he said that Jones had beaten Parti, that there was no agreement to commit the robbery, and that he had taken the purse from Jones and ran away with it.

Before trial, Flores filed a "Motion for Hearing Pursuant to Franks v. Delaware," which requested "a hearing on the truthfulness of certain statements in an affidavit of Rudy Garza." The motion stated:

5

1. Defendant is indicted for the charge of Aggravated Robbery. On July 17, 2009, an arrest warrant was issued to authorize an arrest of Defendant, Giovany Flores. The warrant was based on the affidavit of Rudy Garza, a police investigator for Sugar Land Police Department. A certified copy of the warrant and affidavit are attached as Exhibit A and incorporated herein.

2. The allegations made by Affiant in the affidavit, to wit, were false statements and were made deliberately by Rudy Garza knowing that they were false, or were made with reckless disregard for the truth. There is insufficient probable cause to support the arrest warrant without such false statements.

Flores did not specifically identify which statements he contended were false or provide any extrinsic evidence or affidavits to support his claim of falsehood. The trial court denied this motion after a pre-trial hearing. The next day, after trial had begun, Flores filed a motion to suppress evidence. Flores again argued that the arrest warrant was illegal because the supporting affidavit was insufficient:

7. Defendant specifically shows that the arrest warrant at issue in this case, under which said evidence was seized, was in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, and 19 of the Constitution of the State of Texas and under Article 38.23 of the Texas Code of Criminal Procedure, for the following reasons:

a. The warrant was illegally issued for the reason that the supporting affidavit does not reflect sufficient probable cause to justify the issuance of the arrest warrant, in that: several statements in the affidavit are not supported by any witness or evidence on the date the warrant was issued.

b. The warrant was illegally issued because the affidavit did not show probable cause sufficient to justify the issuance

6

of the arrest warrant, because the magistrate who issued the arrest warrant did not have a substantial basis for concluding that probable cause existed.

c.    The arrest warrant was illegally issued because the issuing magistrate was misled by information in the affidavit that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth.

Among other things, Flores asked the court to suppress all tangible evidence seized by law enforcement officers in connection with his arrest and the statements he gave to police.

At the hearing on the motion to suppress, the State argued that Flores was attempting to obtain the same preliminary evidentiary hearing that was already denied by the court in response his motion for a *Franks v. Delaware* hearing. The trial court examined the affidavit, concluded it was sufficient to show probable cause, and denied the motion.

During trial, Officer Garza testified about the interviews he conducted with Flores's brother Daniel, who told him that Flores had said he pulled the purse from Parti and tried to pull the rings from her hands. Both interviews were admitted into evidence and played for the jury at trial. Flores did not testify in his own defense.

On cross-examination, Garza testified about the warrant issued for Flores's arrest. As to statements that Flores assisted Jones by "continuing punching and pulling at Mrs. Parti, trying to forcefully take her purse from her shoulder," Garza

7

declined to characterize this as a false statement, but he could not identify who provided that information. None of the witnesses, including Parti, specifically mentioned Flores as the man who hit her. Instead, the witnesses observed Jones and Flores running either toward or away from Parti.

Garza was also questioned about a statement that Moore advised him that he "observed defendant." He conceded this was statement was erroneous and that it could have been written more clearly. He testified that Moore did not know that the person he observed in the alley was Flores. Garza also testified that when he made the affidavit he knew Moore was referring to Flores because of other evidence, including the fingerprints and surveillance video from the pub.

At the charge conference, Flores objected to the proposed jury instructions, which included the law of parties and that "[m]ere presence alone will not constitute one a party to an offense." He requested an additional instruction regarding intent, and he also requested an instruction regarding lack of common design and independent impulse of another. The trial court denied the requested jury instructions, and the jury found Flores guilty. Flores appealed.

## Analysis

### I. Sufficiency of the evidence

In his first issue, Flores contends the evidence is legally insufficient to establish that he intentionally or knowingly committed the offense of aggravated

8

robbery.  Specifically, he argues the evidence showed only that he was present at the scene, and not that he participated in the robbery.

In reviewing the sufficiency of the evidence to support a criminal conviction, a court of appeals will determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  Our review of the evidence includes evidence that was properly and improperly admitted.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony.  *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  We presume that the fact finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution.  *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.  On appeal we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact finder.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

9

A person commits aggravated robbery when the person commits robbery and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, the person intentionally or knowingly places another in fear of imminent bodily injury or death. *Id*. § 29.02(a). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id*. § 31.03(a) (West Supp. 2011). A firearm is considered a deadly weapon. *See id*. § 1.07(a)(17)(A) (West 2011).

Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See id*. § 7.02(a)(2). In determining whether one has acted as a party in the commission of a criminal offense, the court may look to events before, during, and after the commission of the offense. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). "Circumstantial evidence alone may be used to prove that a person is a party to an offense." *Id.* at 506. "Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence." *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). Mere presence of the defendant at the scene is not sufficient to

support a conviction, however it may suffice to show defendant was a participant when combined with other facts. *Powell*, 194 S.W.3d at 507–08.

Flores contends that although he was with Jones when the robbery occurred, the evidence is insufficient to prove he intentionally or knowingly committed aggravated robbery. He argues that none of the witnesses, including Parti, were able to confirm his identity, adding that some witnesses gave conflicting testimony regarding his description. Flores contends that the evidence was insufficient because no eyewitness testified to seeing him using a gun or breaking Parti's finger. Flores also contends there is no evidence in the record to suggest he had any involvement in the robbery besides his presence at the scene. He argues that the record does not contain any evidence that he ever possessed the gun or participated in the robbery.

Surveillance video from the pub and Flores's admission in his recorded statements showed that Flores and Jones were together before the robbery. Moore testified that he saw the two men together standing by a dumpster just before the robbery. Moore and Parti testified that two men ran up to her together. Parti said the men were close together during the robbery and that they ran away together. Moore and Satia also saw the two men run away together. In addition, Parti testified, "[T]hey said, give me your rings." Garza testified that Daniel said Flores had admitted taking Parti's purse and trying to pull the rings off her fingers. In his

11

recorded statements, Flores admitted that he took the purse from Jones and ran away with it. He also admitted to taking and hiding the gun that was used in the assault.

Based on the evidence in this trial, a rational finder of fact could have found beyond a reasonable doubt that Flores caused Parti serious bodily injury while stealing her purse or that he aided or assisted Jones in stealing Parti's purse while exhibiting a deadly weapon and causing serious bodily injury. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Flores was guilty of aggravated robbery, acting alone or as a party to the offense. We hold that the evidence is legally sufficient to support Flores's conviction, and we overrule the first issue.

## II. Motion to suppress

In his second issue, Flores argues the trial court erred in denying his motion to suppress and in refusing to allow defense witnesses to testify at an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), whereby he sought to void the search warrant and suppress all resulting evidence based on his allegation that Garza's affidavit contained false statements.

In *Franks*, the United States Supreme Court held that when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in

12

the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676. "An affidavit supporting a search warrant begins with a presumption of validity; thus, the defendant has the burden of making a preliminary showing of deliberate falsehoods in that affidavit before he is entitled to a *Franks* hearing." *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003). The movant's allegations "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684. In order to obtain a *Franks* hearing, a defendant must:

> (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false;
> (2) accompany these allegations with an offer of proof stating the supporting reasons; and
> (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant.

*Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). "Thus, specific allegations and evidence must be apparent in the pleadings in order for a trial court to even entertain a *Franks* proceeding." *Id*.

We review a trial court's ruling on a *Franks* motion and on a motion to suppress under a bifurcated standard of review. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Jones v. State*, 338 S.W.3d 725, 739 (Tex.

13

App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, while we review de novo application-of-law-to-fact questions that do not turn upon credibility and demeanor. *Jones*, 338 S.W.3d at 739; *see Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

Flores did not meet the requirements necessary to obtain a hearing under *Franks*. He did not specifically point out the portion of the affidavit alleged to be false. He did not provide an offer of proof to support his allegation of falsity. He did not show that without the allegedly false statements, the affidavit was insufficient to support the arrest warrant. We hold that the trial court did not err by denying Flores's *Franks* motion. *See Harris*, 227 S.W.3d at 85.

At the hearing regarding Flores's pretrial motion, Flores orally specified the parts of the affidavit he believed contained false statements, which stated:

> The defendant stood by and assisted Kye Jones by attempting to pull the purse from Mrs. Parti as Kye Jones continued punching and pulling at Mrs. Parti, trying to forcefully take her purse from her shoulder.

> The defendant and Kye Jones continued punching and pulling at Mrs. Parti, causing large lacerations on Mrs. Parti's head and a broken finger and lacerations on her right hands. They were able to break the strap of the purse, giving them access to the purse.

14

Flores argued that the arrest warrant affidavit mentioned that Moore advised Officer Garza that he "observed the defendant" even though Moore was never able to positively identify Flores. Finally, Flores's trial counsel argued that the affidavit was too vague, and does not mention specifically which witnesses provided Garza with certain information, only stating that his "investigation revealed," and "[Garza] learned from a witness." These more specific oral allegations of falsity likewise fail to raise a *Franks* issue because they are conclusory, suggest a mere desire to cross-examine, and fail to provide any offer of proof to support an allegation of falsity. *See Franks*, 438 U.S. at 171, 98 S. Ct. at 2684.

The motion to suppress was similarly conclusory, stating that "[t]he arrest warrant was illegally issued because the issuing magistrate was misled by information in the affidavit that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth." The motion did not specify which statements in the affidavit were allegedly false, provide an offer of proof to support the allegation of falsity, or show how the affidavit would be insufficient to support the warrant absent the allegedly false statements.

We hold that the trial court did not err by denying the motion to suppress, and we overrule this issue.

**III. Jury charge**

**a. Law of parties**

In his third issue, Flores argues that the trial court erred when it refused his requested additional jury instructions relating to the law of parties. Flores does not provide argument or authority showing that the exclusion of his proposed instructions was error.

We employ a two-step process to review allegations of jury-charge error. First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If there is error, we then proceed to review the record to determine whether sufficient harm was caused by the error to require reversal of conviction. *Id.*

The court's charge included the following instructions pertinent to the law of parties:

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

Each party to an offense may be charged with the commission of the offense.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Mere presence alone will not constitute one a party to an offense.

16

At the charge conference, Flores objected to the proposed jury instructions and requested additional instructions to be added. First, Flores requested an instruction regarding intent:

> [I]n order to establish liability, as a party, based upon the illegal conduct of another, it must be proven that the accused maintain [sic] the specific intent to promote or assist the commission of the offense. The agreement must occur before or contemporaneous with the criminal event. The evidence must show that the parties were acting together, each doing some part of the execution of the common design. Acts committed after the offense is completed cannot make one a party to the offense.

Flores also requested an instruction regarding lack of common design and independent impulse of another, so that:

> [I]f there was no such common design and intent of all, including the defendant to commit the offense . . . if any, was committed by one or more acting independently of the defendant in doing so, and without participation by him, in the design and the intent to commit it, then the defendant is not guilty.

"As a general proposition, a jury charge that tracks the language of the relevant statute is sufficient and therefore not erroneous." *Hernandez v. State*, 340 S.W.3d 55, 61 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Additionally, the Court of Criminal Appeals has held that a defense that is not recognized by the Legislature in the relevant statute as either a defense or as an affirmative defense does not warrant a separate instruction. *See Giesberg v. State*, 984 S.W.2d 245, 246–47 (Tex. Crim. App. 1998).

The trial court's charge tracks the language of the relevant statute, and Flores's proposed jury instructions are not listed as statutory defenses. *See* TEX. PENAL CODE ANN. § 7.02. Rather, they seek to negate Flores's intent, an essential element of the State's burden of proof. The charge given by the trial court adequately instructed the jury regarding the specific elements of the offense and the required intent needed to convict Flores. We hold that the trial court did not err in denying his requests.

**b. Article 38.23 instruction**

Flores also contends he was entitled to an Article 38.23 jury instruction regarding the legality of the arrest warrant affidavit signed by Garza. In relevant part, Article 38.23 of the Texas Code of Criminal Procedure states:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

The Article 38.23 jury instruction referenced by Flores in his brief is not included in the clerk's record, but Flores raised the issue at the charge conference:

18

DEFENSE COUNSEL: Additionally, based upon the testimony of Detective Garza, however the Court wants to interpret his testimony regarding whether he could have typed it better, whether it was a false statement or whether it was a lie, perhaps, on the stand, would negate and would render this arrest warrant illegal. And thus, I believe that Mr. Flores is entitled to a . . . Code of Criminal Procedure, Article 38.23 instruction regarding the illegal arrest warrant issued and whether any evidence obtained therefrom—I can read it again into the record if you would like.

TRIAL COURT: I've read it. It's not necessary that you read it.

DEFENSE COUNSEL: Okay. Maybe, just for the record, I want to make sure that the record is clear as to what I'm requesting. Based upon that, I believe . . . that Detective Garza's . . . testimony would allow and should authorize the Court to grant a 38.23 instruction to be submitted to the jury. . . .

The trial court overruled the request for an Article 38.23 instruction. From the context, it is apparent that Flores was again attempting to raise an issue pertaining to the allegedly false statements in Garza's arrest warrant affidavit.

Flores does not specify in his brief what factual dispute was before the jury to resolve. Texas Rule of Appellate Procedure 38.1(i) requires the briefs to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Moreover, this Court does not have an obligation to construct and compose Flores's issues, facts, and arguments with appropriate citations to authorities and to the record. *See also Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). In failing to specify what factual dispute was raised and how it was material to the lawfulness of any

evidence that was introduced at trial, Flores has waived his objections and presents nothing for review. Moreover, Flores does not explain what evidence was obtained in violation of the law, especially in light of the fact that the search of Flores's apartment was consensual, Flores voluntarily surrendered himself to the police, denying any knowledge of an arrest warrant, and he voluntarily gave two recorded statements, waiving his *Miranda* rights. *See, e.g.*, *Johnson v. State*, 871 S.W.2d 744, 750–51 (Tex. Crim. App. 1994) (explaining relationship of attenuation-of-the-taint doctrine to Article 38.23 instruction).

We overrule this issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).