**Opinion issued September 26, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00026-CR

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**EFRAIN MARTINEZ, Appellee**

**On Appeal from the County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Case No. 12-CCR-161047**

## MEMORANDUM OPINION

This is a State's interlocutory appeal from the trial court's order granting a motion to suppress evidence. Appellee, Efrain Martinez, was charged with possession of less than two ounces of marijuana in a drug-free zone. *See* TEX.

HEALTH & SAFETY CODE ANN. §§ 481.121(b)(1); 481.134(f)(1) (West 2010). Martinez filed a motion to suppress evidence found as a result of the search of his house pursuant to a warrant. The trial court granted Martinez's motion. In a single issue, the State contends that the trial court erred by granting Martinez's motion to suppress. We reverse and remand.

## Background

On February 22, 2012, Fort Bend Police Department Detective R. Zavala obtained a warrant to search Martinez's house. The affidavit identified a suspected residence in Fort Bend County by its address and physical description. It identified Martinez and Sheri Engelke, who lived with him, as suspected persons by physical description and driver's license number. The affidavit averred that "evidence relative to the trafficking of narcotics," including marijuana, was concealed and kept at the suspected residence in Fort Bend County.

The affidavit offered the following explanation in an attempt to establish probable cause:

> III.) Your Affiant has probable cause for said belief by reason of the following facts:
>
> > A.) Your Affiant, Detective R. Zavala, is a Peace Officer licensed by the State of Texas and employed with the Fort Bend County Sheriff's Department as a Detective with the Fort Bend County Narcotics Task Force.
> >
> > B.) On the grounds for the issuance of this warrant are derived from surveillance, [p]hysical evidence, prior narcotic

2

investigations, reports, and conversations with persons further mentioned below that have personal knowledge of the events described herein. Based on my experience and training, and from conversations with others involved in narcotics law enforcement, I know the following:

1.) It is common for individuals who deal with Marijuana to hide contraband and proceeds of drug sales in secure locations within their residences and in their vehicles for ready access and to conceal from law enforcement authorities.

2.) Individuals who deal in cocaine commonly keep paraphernalia for packaging, cutting, weighting, ingesting, and distributing illegal controlled substances. This paraphernalia usually includes scales, bags, cutting agents, pipes, and other ingesting materials.

C.) Your affiant, Detective R. Zavala, is employed by the Fort Bend County Sheriff's Office and currently assigned to the Fort Bend County Narcotics Task Force. On Thursday, February 2, 2012 your affiant received information Efrain Martinez is possibly using and/or selling marijuana from a residence located at [Martinez's address].

Your Affiant conducted a search through the Fort Bend County data base and learned the Fort Bend County Sheriff's Office Patrol Division had taken a report (11-16474) listing Efrain Martine[z] as a suspect involving marijuana. Your affiant also conducted a search on the Texas Department of Public Safety Image Retrieval System and located a Texas Driver License Photo of Efrain Martinez.

The affidavit also described the investigation that Detective Zavala conducted prior to seeking a search warrant.

3

After receiving the tip that Martinez was "possibly using and/or selling marijuana" at his residence, Detective Zavala conducted surveillance of the house on February 10, February 14, and within 24 hours prior to executing the search warrant affidavit dated February 22, 2012. Each time he observed a trash can containing several white plastic trash bags in front of the house near the curb of the street. Each time, Zavala identified himself to the driver of the garbage truck and instructed him to place the trash in the truck without compacting it, drive around the corner, and allow him to place the abandoned trash in his car. Zavala transported the trash to the Fort Bend County Narcotics Task Force office, where the contents of the trash bags were photographed and examined.

The first trash run, conducted on February 10, yielded no "illegal contraband." However, Zavala noted the presence of loose tobacco and several Swisher Sweet cigarillo wrappers. Zavala averred that through his training and experience he "has learned [that] individuals who smoke marijuana empty the regular tobacco out of the Swisher Sweet mini cigarillos and refill[] them with marijuana." The second trash run, conducted on February 14, yielded more Swisher Sweet wrappers, some loose tobacco, a stem-like substance, mail addressed to Sherri Engelke at the address of the suspected residence, and burnt cigars that field-tested positive for marijuana. The third trash run, conducted within 24 hours before execution of the search-warrant affidavit, yielded a green

4

stem-like substance that Zavala believed to be marijuana and mail addressed to both Engelke and Martinez at the suspected residence. The green stem-like substance field-tested positive for marijuana.

During his investigation, Zavala observed two vehicles at Martinez's house: a maroon Ford F-150 pickup truck, registered to Engelke at the address of the suspected residence, and a Dodge car registered to Martinez at the same address. Zavala once saw Martinez retrieve "something" from the pickup truck and return to his house, and he once saw him drive away from his house in the pickup truck.

The search warrant was executed on the day it was signed. Police found marijuana, glass pipes, a bong, an electronic scale, plastic bags, unknown liquid in syringes, an unknown white powdery substance, and a metal grinder. Martinez was charged with possession of less than two ounces of marijuana in a drug-free zone because his house is located within 1,000 feet of a playground.

Martinez filed a motion to suppress, which argued that his "arrest and search . . . was conducted without legal justification or excuse in violation of the right to be free from unlawful search and seizure." The trial court held a hearing on the motion. The State argued that the motion was vague, did not identify what evidence Martinez wanted to suppress, and did not specify how the warrant was insufficient. The trial court stated, "My understanding is he wants a ruling as to the viability of the affidavit on the search warrant." Martinez's attorney added,

5

"Our position is that the four corners of the affidavit fails to establish probable cause to believe that there was any marijuana or other illegal items in the house that would justify the issuance of the search warrant." The search warrant, inventory of items found during the search, and the search warrant affidavit were admitted into evidence.

The court did not hear any legal argument from either side, but said, "I have been party to and read some of the warrants for these trash pickups that were much more detailed and a clearer vision of probable cause. I think this one is lacking." The court determined that the search warrant was insufficient based on the lack of corroboration of what appeared to be a tip from a confidential informant and the overall substance of the affidavit. The court granted the motion to suppress, and the State appealed.

## Analysis

Ordinarily, we review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the facts found by the court and reviewing de novo its application of the law. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). But when a trial court determines if there was sufficient probable cause to support a search warrant, the court is constrained to the four corners of the affidavit, and there are no credibility determinations to be made. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim.

App. 2011). "[B]ecause of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search," we review the sufficiency of an affidavit to determine if there is a substantial basis upon which the magistrate could have concluded that probable cause existed. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983)). For the same reason, our review is "highly deferential" to the magistrate's decision. *Id.* (citing *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331). We extend this deference to the magistrate's determination to encourage the use of warrants, which "greatly reduces the perception of unlawful or intrusive police conduct." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331. "This 'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

Under Texas law, no search warrant may issue without a sworn affidavit that sets forth facts sufficient to establish probable cause. TEX. CODE CRIM. PROC. ANN. art. 18.01(b), (c) (West Supp. 2011). Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found at the specified location at the time the warrant is issued. *See McClain*, 337 S.W.3d at 272. To establish probable cause, the affidavit must show:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art 18.01(c) (West Supp. 2011). "The facts stated in a search affidavit 'must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified.'" *McLain*, 337 S.W.3d at 272 (quoting *Flores v. State*, 827 S.W.2d 416, 418 (Tex. App.—Corpus Christi 1992, pet. ref'd)).

When reviewing a search warrant affidavit under the "substantial basis" standard, we interpret the affidavit in a commonsensical and realistic manner, and we defer to all reasonable inferences that a magistrate could have made. *See Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *Jones v. State*, 338 S.W.3d 725, 733 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). We consider the totality of the circumstances, including whether any tips have been corroborated by independent police work. *Gates*, 462 U.S. at 238, 241, 103 S. Ct. at 2332, 2334; *see Rodriguez*, 232 S.W.3d at 62. Statements that are merely conclusory will not supply a substantial basis for such a decision. *Gates*, 462 U.S. at 239, 103 S. Ct. at 2332–33; *see Rodriguez*, 232 S.W.3d at 61. Rather, we must determine whether there are sufficient facts stated

8

within the four corners of the affidavit, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a specified location. *Jones*, 338 S.W.3d at 733 (citing *Rodriguez*, 232 S.W.3d at 62); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996). "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012).

The State argues that the trial court did not accord proper deference to the magistrate's determination of probable cause. The State relies on *Flores v. State*, 319 S.W.3d 697 (Tex. Crim. App. 2010), and the following facts that were included in the affidavit to establish probable cause: (1) "an anonymous informant['s] . . . tip that [Martinez] was using or selling narcotics from a known residence," (2) Martinez had previously been "a suspect in a marijuana case," (3) there was only one trash can in front of Martinez's house, (4) vehicles in front of Martinez's house were registered to him and to Engelke, (5) three "trash runs" were conducted, (6) the tobacco and Swisher Sweet wrappers found in Martinez's trash are "consistent with narcotics use," (7) two of the trash runs recovered marijuana residue, and (8) field tests showed the presence of marijuana. The State argues that the affidavit in this case is very similar to the affidavit in *Flores*, which was held to have provided a substantial basis for the magistrate to find probable

9

cause to issue a search warrant.  Although we disagree with the State's contention that this case is analogous to *Flores*, according proper deference to the reasonable conclusions the magistrate could have reached, we nevertheless find that the search warrant affidavit was sufficient.

In *Flores*, a "concerned citizen" provided an anonymous tip about narcotics activity occurring at a certain home in San Marcos, Texas.  319 S.W.3d at 698–99.  Police officers conducted an investigation to corroborate the information provided by the confidential informant, including the identity of the people who lived at the house in question, the vehicles normally found there, and information about a prior investigation conducted by Child Protective Services.  *Id.* at 699.

In addition, the police twice examined abandoned household garbage left on the street in front of the residence in question.  *Id.* at 699–700.  The first trash run revealed two empty packages of cigarette rolling papers and a plastic bag containing a small amount of marijuana residue, and the second run revealed several marijuana stems, seeds, and residue.  *Id.*  In addition to describing the anonymous tip and subsequent investigation, the search warrant affidavit in *Flores* also noted that the affiant was "a longtime peace officer with extensive training and experience in narcotics investigations."  *Id.* at 702.  When the search warrant was executed, police found small quantities of marijuana and cocaine.  *Id.* at 700.

10

In determining whether the magistrate had a substantial basis for finding probable cause, the Court of Criminal Appeals explained the inferences the magistrate could reasonably make based on both the partially corroborated informant's tip and the physical evidence found in the abandoned garbage. *Id.* at 703. The Court held that the discovery of marijuana in two consecutive trash runs within a five-day period, coupled with the "doctrine of chances," led to the reasonable inference that the marijuana residue found in the trash came from the house under investigation. *Id.* But it was the combined force of the tip, the corroboration of the tip which showed that the informant "had some familiarity with Flores and his affairs," and the physical evidence that gave the magistrate a substantial basis on which to find probable cause. *Id.*

Unlike *Flores*, in this case there is no corroborated confidential informant's tip. The search-warrant affidavit here stated only that Zavala "received information Efrain Martinez is possibly using and/or selling marijuana" from his house. The affidavit does not identify the source of the information or state that there was, in fact, any informant, be it a "concerned citizen" as in *Flores*, a first-time informant of unknown reliability, or a "criminal snitch who is making a quid pro quo trade." *Duarte*, 389 S.W.3d at 356, 357–59. "The citizen-informer is presumed to speak with the voice of honesty and accuracy." *Id.* at 356. No such presumption applies in this case, however, because there is no indication that the

11

information Zavala received came from a citizen-informer. In addition, the information Zavala received was equivocal, i.e., that Martinez was "possibly" using or selling marijuana from his house, and conclusory because there is no basis given for the anonymous source's knowledge. *See Serrano v. State*, 123 S.W.3d 53, 60 (Tex. App.—Austin 2003, pet. ref'd). Finally, the information that Martinez was "possibly" using or selling drugs does not contain sufficient detail to allow an inference that the person supplying the information was familiar with his affairs. *See Flores*, 319 S.W.3d at 703. Accordingly, we do not consider the anonymous information in the search warrant affidavit as part of the totality of circumstances potentially giving rise to probable cause.

Nevertheless, guided by the highly deferential standard of review dictated by the constitutional preference for search warrants, we find the remainder of the search warrant affidavit provided a substantial basis for the magistrate's action. The facts in the affidavit detail the investigation the police conducted and provide support for the magistrate's conclusion. Through investigative work, Zavala confirmed that Martinez and Engelke lived at the suspected residence, that the pickup truck that he saw near the house belonged to Engelke, and that the Dodge car he saw in front of the residence belonged to Martinez. Zavala saw Martinez driving the pickup truck. He also determined that a Fort Bend County sheriff once "had taken a report . . . listing Efrain Martine[z] as a suspect involving marijuana."

12

The affidavit described the three trash runs that Zavala conducted. Zavala explained the significance of the Swisher Sweet wrappers and loose tobacco that he found in the first trash run, saying that he knew, based on his training and experience, that "individuals who smoke marijuana empty the regular tobacco out of the Swisher Sweet mini cigarillos and refill[] them with marijuana." The affidavit states that Zavala is "employed by the Fort Bend County Sheriff's Office and currently assigned to the Fort Bend County Narcotics Task Force," which provides a basis for an inference that Zavala has had experience and training pertaining to narcotics crimes.

In the second trash run, Zavala discovered stem-like substances, burnt marijuana cigars, Swisher Sweet wrappers, loose tobacco, and mail addressed to Engelke at the address of the suspected residence. The affidavit says that Zavala field-tested the suspected marijuana and got a positive result. In the third trash run, Zavala found "a green stem like substance," which field-tested positive for marijuana. He also found mail addressed to both Martinez and Engelke at the address under surveillance. The mail addressed to Martinez and Engelke provides a basis for connecting the marijuana discovered in the garbage in the second and third trash runs to the suspected residence.

Considering the totality of the information in the four-corners of the search warrant affidavit, a magistrate could reasonably infer that: (1) Detective Zavala has

13

specialized training and experience in the area of narcotics-related crimes; (2) Martinez had previously been suspected of some criminal activity related to marijuana; (3) garbage that Zavala collected came from Martinez's house; and (4) one or more persons used marijuana in Martinez's house over a period that extended at least a week. *See, e.g.*, *Flores*, 319 S.W.3d at 703. Because the trash runs revealed evidence of marijuana possession and use, the magistrate could have inferred ongoing criminal activity, as opposed to a mere isolated incident. *See Jones*, 338 S.W.3d at 736–37; *see also State v. Coker*, No. 05-12-00616-CR, 2013 WL 3728819, at *6 (Tex. App.—Dallas July 17, 2013, no pet. h.) (holding that single trash search coupled with other incriminating facts provided probable cause for search of residence). Because the third trash run was conducted within 24 hours of the application for a search warrant, the magistrate could reasonably have inferred that there was a "fair probability" that evidence of ongoing criminal activity would be found at the suspected residence at the time the magistrate issued the search warrant. *See Jones*, 338 S.W.3d at 733; *Coker*, 2013 WL 3728819, at *6.

Although the absence of a corroborated informant's tip makes this case a somewhat closer call than *Flores*, well-established constitutional principles that inform our substantial evidence standard of review require that we defer to the magistrate's determination in a case such as this. *See Gates*, 462 U.S. at 236, 103

14

S. Ct. at 2331; *McLain*, 337 S.W.3d at 271; *Flores*, 319 S.W.3d at 702. We conclude that the trial court erred by granting Martinez's motion to suppress. Accordingly, we sustain the State's sole issue, and we reverse and remand for further proceedings.

## Conclusion

We reverse the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Justice Sharp, dissenting.

Do not publish.   TEX. R. APP. P. 47.2(b).

15