**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00327-CR**
_____

**STEPHEN ROBERT BARLOW, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-09-10108-CR**

**OPINION**

A state statute makes it unlawful for a person, previously convicted of a felony, to possess a firearm.[1] A separate statute defines "possession" to mean "actual care, custody, control or management."[2] Following a jury trial, Stephen Robert

---

[1] *See* Tex. Penal Code Ann. § 46.04 (West 2011) (the felon in possession statute).

[2] *Id*. § 1.07 (a)(39) (West Supp. 2018).

Barlow was found guilty of violating the felon-in-possession statute. On appeal, Barlow seeks to overturn his conviction, arguing the evidence admitted in his trial fails to show he knowingly or intentionally possessed the firearm found in a car a deputy sheriff saw him leaving a short time before his arrest. In a second issue, Barlow argues the trial court prejudiced his defense by allowing the prosecutor to introduce hearsay evidence about what two witnesses told the deputy during his investigation that led to Barlow's arrest. We conclude Barlow's issues are without merit and affirm the trial court's judgment.

Background

In September 2015, Deputy Sheriff Kenneth Provenzano arrested Barlow after conducting an investigation that led the deputy to believe that Barlow had violated the felon-in-possession statute.[3] The evidence in the trial shows that while patrolling a residential area in Montgomery County, Deputy Provenzano decided to investigate why a group of men were standing around a car with several people inside, which the deputy saw parked in the driveway in front of someone's home. When the deputy approached the men, the man who was in the car's front seat as well as the other men in and around the car began to walk away. The deputy, after telling the men he saw

---

[3] *See id*. § 46.04.

2

leaving the car to return, talked to three of the men: (1) the driver; (2) the front-seat passenger; and (3) the back-seat passenger.

When Deputy Provenzano asked the man he saw leave the car's front seat his name, the man told the deputy he was Stephen Barlow. Then, Barlow told the deputy that a shotgun, used in a recent robbery, was located inside a backpack on the floorboard below his feet. And Barlow told the deputy the gun did not belong to him. Deputy Provenzano then searched Barlow, discovering a yellow, twenty-gauge shotgun shell in Barlow's pocket. In the course of the investigation, Deputy Provenzano checked Barlow's criminal background and learned that Barlow had previously been convicted of a felony. The deputy also spoke to the two other men he saw leaving the car, Darrel Creel, the driver, and Mason Shankle, who left the car's back seat.

A short time later, Deputy Provenzano searched the car. In the search, the deputy located the shotgun in the exact location where Barlow told him he had seen the backpack in the car. After determining that the shotgun had the same type of shell in it that he found in Barlow's pocket, Deputy Provenzano arrested Barlow for violating the felon-in-possession statute.

In December 2015, a grand jury charged Barlow with violating the felon-in-possession statute.[4] In March 2017, the case against Barlow went to trial. The State called two witnesses in the guilt-innocence phase of Barlow's trial, Deputy Provenzano and Larry Melton. Deputy Provenzano testified that Barlow told him about the shotgun and that he found a shotgun shell in Barlow's pocket and a backpack lying on the floorboard close to where he saw Barlow sitting when Barlow was in the car. The trial court also admitted a dashcam video recording captured by a recorder in Deputy Provenzano's police car. The video, which the jury viewed, is consistent with Deputy Provenzano's testimony that Barlow left the front-passenger seat of the car when the deputy approached it. Melton, an investigator with the Montgomery County District Attorney's Office, testified that Barlow had previously been convicted for possessing a controlled substance, a state jail felony.[5]

---

[4] *Id.* § 46.04(a) (prohibiting a felon from possessing a firearm anywhere—including in his home—for a period of five years starting from the date the convicted felon completes his sentence).

[5] Melton's testimony and exhibits admitted in Barlow's trial established that in May 2013, Barlow pleaded guilty to an indictment charging him with a state jail felony based on his possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(b) (West 2017). Barlow does not argue the evidence is insufficient to support the jury's finding that he had been convicted of a prior felony before he was arrested for violating the felon-in-possession statute.

Barlow called one witness, Joshua Cravens, to testify in his defense. According to Cravens, he and three others, Matthew Cravens (his older brother), Creel, and Shankle were in the car when Creel drove them to the house where Barlow was arrested that night. Cravens explained that he did not talk to the police because when he saw a police car approaching the car, he ran away. According to Cravens (1) the shotgun the deputy found in the car belonged to his older brother, (2) Barlow was not with the men in the car when Creel drove the car to the house, (3) he first saw Barlow after the car stopped in the driveway, (4) he saw two backpacks and a shotgun on the way to the house while sitting in the back seat of Creel's car, (5) at no time did he ever see Barlow holding anything in his hands, (6) he never saw Barlow get into the car, and (7) he never saw Barlow with the backpack in the car. Cravens also testified that Matthew appeared excited when he learned the deputy arrested Barlow for possessing the shotgun.

We need to provide some additional details about Deputy Provenzano's testimony to address Barlow's second issue, in which Barlow argues the trial court erroneously overruled the hearsay objection he lodged to parts of Deputy Provenzano's testimony. According to Barlow, the trial court should not have allowed the prosecutor to question Deputy Provenzano about what he learned from

5

two of the men the deputy questioned during the investigation that led to Barlow's arrest.

The reporter's record from the trial shows that when the prosecutor questioned Deputy Provenzano on direct, the deputy explained that, while approaching the parked car, he saw three men in the car—one in the driver's seat, another in the front-passenger seat, and a third in the back seat of the car. Deputy Provenzano explained the driver identified himself as Darrel Creel, and the man in the back seat identified himself as Mason Shankle. The State never asked Deputy Provenzano to testify about what Creel and Shankle told him during the investigation that led to Barlow's arrest.

On cross-examination, Barlow's attorney asked Deputy Provenzano whether the accounts Creel and Shankle gave him during his investigation "sort of matched[?]" The deputy testified "No[,]" and he explained that Creel's and Shankle's accounts differed on the subject of why they were at the house without providing the jury with any additional detail.

After the deputy was cross-examined, the prosecutor asked the trial court to allow the State to ask Deputy Provenzano what he learned from Shankle and Creel

6

that night.[6] Barlow objected to the request, arguing that questioning the deputy about what Shankle and Creel told him would inject hearsay testimony into the case. The trial court, however, ruled that Deputy Provenzano could testify about what he learned from the two men to complete his testimony about whether their stories matched.

On redirect, Deputy Provenzano testified that Shankle told him (1) they went to the house after Creel and Barlow picked him up "because of a cell phone issue[,]" (2) Barlow was in the car when Creel drove to the house, and (3) the only bag Shankle had in the car was in the car's back seat. Turning to Creel, Deputy Provenzano testified that Creel told him (1) he went to the house "because of a car issue[,]" (2) Barlow was with them when Creel took them to the house, and (3) Creel told the deputy none of the bags in the car belonged to him. Thus, their respective "stories" matched in some ways but not others.

Following closing argument, the jury found Barlow guilty.[7]

---

[6] At trial, the State argued that by questioning the deputy about Shankle's and Creel's accounts, Barlow's attorney opened the door to allowing further testimony about what they said to the deputy under the rule of optional completeness. *See* Rule 107 of the Texas Rules of Evidence. Tex. R. Evid. 107 ("If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject.").

[7] *See* Tex. Penal Code Ann. § 46.04(a).

Analysis

*Sufficiency Issue*

In deciding whether sufficient evidence supports a verdict, we review all the evidence in the light most favorable to the verdict to determine whether the evidence allowed the jury to reasonably find Barlow guilty beyond a reasonable doubt.[8] In our review, we consider all the evidence before the jury, whether or not that evidence was properly admitted in the defendant's trial.[9]

In jury trials, the jury acts as the sole judge of the credibility and weight to attach the testimony.[10] Juries are allowed to weigh any circumstantial evidence admitted in the trial in the same way they weigh direct evidence when deciding whether the defendant is guilty.[11] Thus, even though there may not be direct evidence to establish the defendant committed the alleged offense, the cumulative force of the incriminating circumstances may offer sufficient support for a jury's

---

[8] *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

[9] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

[10] *Jackson*, 443 U.S. at 316; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

[11] *Jenkins v. State,* 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

verdict, which allows the verdict to be affirmed on appeal.[12] As the court reviewing the evidence admitted in a trial, our role "is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged."[13]

As a convicted felon, Barlow could not lawfully possess any firearms for a period ending five years after completing his sentence under his 2013 conviction for possession of a controlled substance.[14] To prove Barlow violated the felon-in-possession statute, the State had the burden to prove that (1) Barlow (2) after being convicted of the 2013 felony offense of possession of a controlled substance (3) intentionally or knowingly possessed (4) a firearm (5) before the fifth anniversary of his release from confinement.[15] In cases involving possession of firearms, the State can prove the defendant knowingly or intentionally possessed a firearm by introducing evidence, either direct or circumstantial, to establish the defendant (1) exercised care, control, or custody of the firearm, (2) was conscious of his

---

[12] *See Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

[13] *Queeman*, 529 S.W.3d at 622.

[14] Tex. Penal Code Ann. § 46.04(a).

[15] *See id.*

9

connection with the firearm, and (3) possessed the firearm knowingly or intentionally.[16] When, as in this case, the State's evidence is circumstantial, the evidence before the jury must establish that the defendant's connection to the firearm was more than fortuitous.[17]

In Barlow's case, the State was not required to establish Barlow had exclusive possession of the shotgun.[18] When, however, the evidence before the jury does not establish the defendant had the firearm on his person or that he had exclusive possession of the gun, the evidence in the trial must affirmatively link the defendant to the gun.[19] These links must show the defendant voluntarily possessed the gun or

---

[16] *See id*. § 1.07(a)(39); *Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.—Waco 2014, no pet.); *Bates,* 155 S.W.3d at 216.

[17] *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015).

[18] *See Greer*, 436 S.W.3d at 5 (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986)).

[19] *See Jones v. State*, 338 S.W.3d 725, 742 (Tex. App.—Houston [1st Dist.] 2011) ("'If the firearm is not found on the defendant or is not in his exclusive possession, the evidence must affirmatively link him to the firearm.'") (quoting *James v. State*, 264 S.W.3d 215, 218-19 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

that he "'was conscious of his connection with the weapon and knew what it was.'"[20]

This rule, which is referred to as the "affirmative links" rule, is designed to protect an innocent bystander from being convicted of possession based solely upon the fact the evidence established the defendant was seen near another person's gun.[21]

To determine whether the evidence admitted in the trial satisfies the affirmative links rule, courts look to the following non-exclusive factors:

- was the gun within the defendant's plain view;
- did the defendant own the vehicle where the gun was found;
- was the defendant driving the vehicle where the gun was found;
- was the gun found near the defendant in a location where the defendant could have easily accessed the weapon;
- was the gun found on the same side of the vehicle where the defendant was sitting;
- was the gun found on the defendant;
- did the defendant attempt to flee;
- did the defendant's conduct indicate his consciousness of guilt;
- did the defendant have any special connection or relationship to the gun;
- was the place where the gun was found enclosed;
- did the occupants of the vehicle in which the gun was found give the police conflicting statements about relevant matters; and
- did the defendant's affirmative statements connect him to the gun.[22]

---

[20] *Stout v. State*, 426 S.W.3d 214, 218 (Tex. App.—Houston [1st Dist.] 2012) (quoting *Jones*, 338 S.W.3d at 742).

[21] *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (quoting *Poindexter*, 153 S.W.3d at 405).

[22] *Stout*, 426 S.W.3d at 218 (citing *James*, 264 S.W.3d at 219); *see Bates*, 155 S.W.3d at 216-17.

While courts use the above factors to determine whether the defendant and the gun the State claims the defendant possessed are affirmatively linked, "'the absence of various links does not constitute evidence of innocence to be weighed against the links present.'"[23] Instead, the logical force of the links must allow a reasonable jury to conclude the defendant possessed the gun.[24]

In his brief, Barlow argues that the evidence is insufficient to support the jury's verdict because no witnesses, including Deputy Provenzano, testified they saw Barlow with the shotgun in his hands. According to Barlow, Deputy Provenzano's testimony merely shows that Barlow was aware that a shotgun was in Creel's car. Barlow argues the only evidence linking him to the gun consists of the evidence showing he was aware that a shotgun was in Creel's car and he was seen sitting near the backpack that contained the gun. Barlow argues that without more, this evidence is insufficient to satisfy the affirmative links rule. And Barlow suggests the jury reached the wrong verdict when it chose to reject Cravens' testimony that Creel's

---

[23] *Swapsy v. State*, 562 S.W.3d 161, 165 (Tex. App.—Texarkana 2018, no pet.) (quoting *Williams v. State*, 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)).

[24] *Swapsy*, 562 S.W.3d at 165 (citing *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006)).

brother, not Barlow, is the person who possessed the shotgun Deputy Provenzano removed from Creel's car.

In this case, the evidence the jury considered linked Barlow to possessing the gun in at least five ways. First, the shell Deputy Provenzano removed from the shotgun he found in the car matched the gauge and color of the shotgun shell the deputy found in Barlow's pocket. Second, Deputy Provenzano's testimony about what Barlow told him allowed the jury to conclude that Barlow was aware that a backpack, holding a shotgun, was inside the car. Third, the dashcam video, which the jury viewed, shows Barlow sitting in the car's front-passenger seat—a location that would have allowed Barlow ready access to the gun. Fourth, the evidence shows Barlow attempted to leave the scene after seeing a policeman approach Creel's car, evidence that allowed the jury to infer that Barlow attempted to flee to avoid being questioned by police. Fifth, when Deputy Provenzano questioned Barlow, Barlow appeared to the deputy to be "nervous" and "his hands were shaking," evidence the jury could have used to infer that Barlow exhibited signs consistent with a consciousness of guilt.

Barlow largely ignores these links in his brief. Instead, Barlow points us to Cravens' testimony claiming the gun belonged to his brother, not to Barlow. In cases involving questions of possession, however, the State is not required to prove the

defendant owned an object to prove the defendant possessed it.[25] Also, as the factfinder, the jury had the right to disbelieve Cravens' testimony in deciding whether his testimony weighed against the circumstantial evidence that linked Barlow to the gun.[26]

We conclude the evidence admitted in the trial allowed the jury to reasonably find Barlow guilty beyond a reasonable doubt.[27] We overrule Barlow's first issue.

*Admission of Hearsay*

In issue two, Barlow argues the trial court erred by allowing Deputy Provenzano to testify to matters that were hearsay when it allowed the deputy to tell the jury what he learned from Shankle and Creel.[28] We use an abuse-of-discretion standard to review an issue in an appeal that complains the trial court abused its discretion by admitting a witness's testimony.[29] To establish that an abuse of

---

[25] *See* Tex. Pen. Code Ann. § 1.07(a)(39) (defining "possession" as "actual care, custody, control, or management"); *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd) (noting that "the State does not have to prove the accused had exclusive possession of the firearm; joint possession is sufficient").

[26] *See Jackson*, 443 U.S. at 316; *Queeman*, 520 S.W.3d at 622.

[27] *See Jackson,* 443 U.S. at 318.

[28] Tex. R. Evid. 107.

14

discretion occurred, the defendant must establish the trial court's ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree."[30]

Hearsay is an out-of-court statement which a party is offering to prove the truth of the matter asserted by the statement.[31] Generally, absent some exception to the rule that prohibits trial courts from admitting hearsay, such testimony is inadmissible.[32] On appeal, the State argues the rule of optional completeness allowed the trial court to admit Deputy Provenzano's testimony. In contrast, Barlow argues the rule of optional completeness does not apply because allowing the deputy an opportunity to further explain his answer to Barlow's question was unnecessary.

The rule of optional completeness is but one of many recognized exceptions to the rule prohibiting trial courts from admitting hearsay.[33] The Court of Criminal Appeals has explained that Rule 107 "is one of admissibility and permits the

---

[29] *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *see also Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

[30] *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

[31] Tex. R. Evid. 801(d).

[32] *Id.* 802.

[33] *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011); *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007); Tex. R. Evid. 803.

introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party."[34] The rule exists to allow trial courts "to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing."[35] Yet Rule 107 is not triggered if the witness merely refers to a statement someone made to the witness outside the courtroom.[36]

In this case, the trial court could have believed that Deputy Provenzano's response (No) to the question posed by Barlow's attorney—whether their stories sort of matched—created the possibility the jury might have considered his response to mean their "stories" did not match at all, an impression the trial court could have reasonably viewed as false. By allowing the prosecutor to question Deputy Provenzano further, the trial court allowed the deputy to fully explain what the men told him so the jury was not left with the impression that the men gave the deputy completely inconsistent accounts.

---

[34] *Walters*, 247 S.W.3d at 218.

[35] *Id.*

[36] *Pena*, 353 S.W.3d at 814; *Walters*, 247 S.W.3d at 218.

16

The trial court did not abuse its discretion by allowing Deputy Provenzano to fully explain what Shankle and Creel told him to avoid the possibility the jury would be left with a false impression about what the men told the deputy. We conclude the rule of optional completeness authorized the trial court to exercise its discretion to admit the testimony Barlow complains about in his appeal. Barlow's second issue is overruled.

## Conclusion

For the reasons we have explained, the trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 16, 2019
Opinion Delivered August 21, 2019
Publish

Before Kreger, Horton and Johnson, JJ.